**Elvina M. HERWEG, by her husband and next friend, Darrell E. Herweg, and Darrell E. Herweg, and all others similarly situated, Appellants,**

v.

**Robert D. RAY, Individually and in his capacity as Governor of the State of Iowa, and Kevin J. Burns, Individually and in his capacity as Commissioner of the Iowa Department of Social Services, Appellees.**

No. 78–1664.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1979.

Decided March 18, 1980.

Rehearing Denied April 22, 1980.

Gill Deford, National Senior Citizens Law Center, Los Angeles, Cal., for appellants; Neal S. Dudovitz, Los Angeles, Cal., and Robert L. Bray, Legal Services, Corp. of Iowa, Des Moines, Iowa, on brief.

Stephen C. Robinson, Asst. Atty. Gen., Des Moines, Iowa, for appellee; Richard C. Turner, Atty. Gen., Des Moines, Iowa, on brief.

Thomas J. Miller, Atty. Gen., and Stephen C. Robinson, Special Asst. Atty. Gen., Des Moines, Iowa, on supplementary brief.

David R. Smith, Washington, D. C., for amicus curiae, U. S. Dept. of Health, Education and Welfare.

Before GIBSON, Chief Judge,* and LAY, HEANEY, BRIGHT, ROSS, STEPHENSON, HENLEY, and McMILLIAN, Circuit Judges.

## ORDER

Pursuant to the attached opinion, the judgment of the district court is affirmed by an equally divided court, except that portion relating to the sources of income the state may consider as available to Medicaid applicants and recipients, which is reversed and remanded.

ROSS, Circuit Judge.

Elvina M. Herweg and her husband, Darrell E. Herweg, individually and as representatives of a class, appeal a decision by the district court[1] making Medicaid eligibility determinations affecting the Herwegs and the class. The district court, in January 1978, enjoined the state of Iowa from determining Medicaid eligibility by "deeming," through the use of an arbitrary formula, the income of a noninstitutionalized spouse as available to the institutionalized spouse. *Herweg v. Ray,* 443 F.Supp. 1315, 1320 (S.D.Iowa 1978).

Later, upon request of the parties, the district court defined the contours of relief it decided to be appropriate. Based on the relevant Medicaid statute, 42 U.S.C. § 1396a(a)(17) the district court disapproved deeming by an arbitrary formula but approved Iowa's use of a factual determination in each case as to the amount the state could consider as available from the noninstitutionalized spouse for the care of the institutionalized spouse. *Herweg v. Ray,* 481 F.Supp. 914, 917 (S.D.Iowa 1978). Appellants, however, contend that this solution violates Medicaid statutes and regulations. They argue that Medicaid eligibility must be determined only on the basis of contributions *actually made* by the noninstitutionalized spouse to the institutionalized spouse's care. They further argue that if the spouse does not actually contribute, even though financially able, the state should determine that the institutionalized spouse is eligible and make full payment of benefits. Then if it desires, the state could sue the financially responsible spouse under its relative responsibility law.

Because the district court invalidated Iowa's "deeming" procedure on statutory grounds the constitutional claims of the plaintiffs were not reached. *Herweg v. Ray, supra,* 443 F.Supp. at 1320. Those claims allege that "deeming" violates the due process clause and the equal protection clause by creation of an irrebuttable presumption and an arbitrary classification.

Before addressing the issues raised by appellants, we will review Iowa's prior "deeming" procedures as applied to the Herwegs' situation.

Since August 1976, 47 year old Elvina Herweg has been in a comatose state which resulted from two cerebral hemorrhages.

\* The Honorable Floyd R. Gibson was Chief Judge of the Eighth Circuit at the time this case was submitted and took senior status on December 31, 1979, before the opinion was filed.

1. The Honorable William C. Stuart, Chief Judge, United States District Court for the Southern District of Iowa.

Mrs. Herweg was placed in a long-term care facility in November 1976.

Darrell Herweg was employed as a butcher when this action was instituted and his gross monthly income was $1,350 (net $1,032). The Herwegs have three teenage daughters at home.

In January 1977, Mr. Herweg applied for Medicaid assistance for his wife. Mrs. Herweg was found eligible for Medicaid and Mr. Herweg was required to pay $234.80 per month toward his wife's medical expenses which were approximately $1,374 per month. The "deemed" amount, $234.80 per month, was arrived at by use of a formula which excluded half of Mr. Herweg's earned income and then excluded standard living allowances for Mr. Herweg and the children at home. Standard exclusions for work expenses and the personal needs of the institutionalized spouse were also allowed.

In June 1977, apparently upon advice from HEW, the state of Iowa's formula for determining eligibility was changed in that one-half of Mr. Herweg's earned income was not excluded. This change resulted in a determination that Mrs. Herweg was no longer eligible for Medicaid and led to the filing of this suit. After the district court granted a temporary restraining order, the state again changed the formula to exclude one-half of Mr. Herweg's earned income. Mrs. Herweg was again determined eligible for Medicaid and based on increased living allowance exclusions, $150.30 of Mr. Herweg's monthly income was deemed available for Mrs. Herweg's medical expenses.

The district court held that the state of Iowa's method of "deeming" through the use of an arbitrary formula conflicted with 42 U.S.C. § 1396a(a)(17) and the applicable regulations 45 C.F.R. 248.3(b)(a)(ii) (currently, 42 C.F.R. 435.723(d) (1978)). _Id._ at 1320. However, without specifically ruling on the validity of the regulation, the district

court found that under the statute, 42 U.S.C. § 1396a(a)(17) the state should be allowed to make a factual determination of actual income and expenses of the noninstitutionalized spouse and determine a reasonable amount to require as a contribution. _Id._ at 1320. The state of Iowa submitted to the district court proposed procedures for making such a factual determination in each case and the district court approved the state's new procedures as entirely consistent with federal law.

It is important to note that the state of Iowa is not challenging the district court's determination that "deeming" through the use of an _arbitrary formula_ is contrary to § 1396a(a)(17). Rather, the conflict involved in this appeal is the method the state of Iowa now uses, which is a factual determination of income actually received and expenses necessarily incurred, to determine the amount of money a state may require as a contribution from the noninstitutionalized spouse who is reasonably able to pay some of the medical expenses of his Medicaid eligible, institutionalized spouse.

The district court certified the class, as requested by plaintiffs, as including instances where the institutionalized spouse _is_ eligible for Medicaid.[2] However, it is clear that the procedures plaintiffs challenge involve the method used to calculate the institutionalized spouse's available income. This same calculation is used not only when determining the amount of the required contribution as in the case of the Herwegs, but also in determining initial eligibility for Medicaid. Therefore, our concern in this case must of necessity focus on not only the application of the procedure to one who _is_ eligible for Medicaid but also the application of the procedure to one who _seeks_ Medicaid eligibility but whose income and expenses may justify the denial of eligibility under the statute.

2. The district court certified the class as consisting of "all married couples residing in Iowa of which: (1) one spouse is eligible for Medicaid and requires institutionalization; and (2) the other spouse is not institutionalized and (3)

the non-institutionalized spouse has income which is, under current state procedures, being deemed available to the institutionalized spouse." _Herweg v. Ray_, 443 F.Supp. 1315, 1320 (S.D.Iowa 1978).

*Jurisdiction*

■ In view of the recent Supreme Court decision in *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), a brief review of jurisdiction is necessary. *Chapman* involved a challenge to state welfare regulations based solely on the grounds that the regulation conflicted with the Social Security Act. The Supreme Court indicated that "an allegation of incompatibility between federal and state statutes and regulations does not, in itself, give rise to a claim 'secured by the Constitution' within the meaning of [28 U.S.C.] § 1343(3)." *Id.* at 615, 99 S.Ct. at 1915. The Court also rejected the argument "that § 1983 is an Act of Congress 'providing for equal rights' within the meaning of § 1343(3)" or a "statute 'providing for the protection of civil rights, including the right to vote'" within the meaning of § 1343(4). *Id.* at 617–18, 99 S.Ct. at 1915–1916. The Supreme Court then held that "[t]he Social Security Act does not deal with the concept of 'equality' or with the guarantee of 'civil rights,' as those terms are commonly understood." *Id.* at 621, 99 S.Ct. at 1917. Therefore, the Social Security Act is not included within the meaning of § 1343(3) or (4). *Id.* at 621, 99 S.Ct. at 1917. However, neither *Chapman* nor the case with which it was consolidated on review, *Gonzalez v. Young*, involved any constitutional claims other than a basic supremacy clause challenge. Further, the Supreme Court specifically noted that "[w]here the underlying right is based on the Constitution itself, rather than an Act of Congress, § 1343(3) obviously provides jurisdiction." *Id.* at 618 n.36, 99 S.Ct. at 1916 n.36. The Supreme Court in *Chapman* did not alter its previous decision in *Hagans v. Levine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). In *Hagans*, the Supreme Court approved the review of a statutory conflict claim under a pendent jurisdiction rationale where the district court had found a substantial constitutional question presented. *Id.* at 536, 94 S.Ct. at 1378. The Supreme Court also noted that:

A [constitutional] claim is insubstantial only if ' "its unsoundness so clearly re-

sults from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." '

*Id.* at 538, 94 S.Ct. at 1379 (citations omitted).

■ In the present case, the complaint alleged a violation of the due process clause, in that "deeming" constitutes an irrebuttable presumption not rationally related to a legitimate state interest. ·The plaintiffs also raised an equal protection claim regarding different treatment of married versus unmarried Medicaid recipients.

Although the district court specifically did not reach the constitutional claims, we hold that the claims present substantial constitutional questions. Thus, the district court possessed pendent jurisdiction over the statutory issues based on its proper jurisdiction over the constitutional claims under 42 U.S.C. § 1983 and § 1343(3).

*The Medicaid Statute*

The district court found that Iowa's "deeming" procedure was contrary to both the relevant statute § 1396a(a)(17) and the relevant HEW regulation 45 C.F.R. § 248.-3(b) [currently 42 C.F.R. § 435.723 (October 1, 1978)]. *Herweg v. Ray, supra,* 443 F.Supp. at 1320. However, the district court also found that "deeming" income to be *unavailable* unless actually contributed, as required by the regulation, "seemed" contrary to congressional intent. *Id.* at 1320. Thus, the district court approved the state of Iowa's new procedure for making a reasonable evaluation as consistent with § 1396a(a)(17). However, there is no dispute that the new procedure approved by the district court is contrary to regulation, § 435.723. Therefore, the issue this court must face is whether the regulation is an incorrect interpretation of the statute, § 1396a(a)(17), thus justifying the result reached by the district court. Other courts have consistently struck down "deeming"; however, the courts have varied or been unclear on the method the state may then

**1270**

use to enforce financial responsibility.[3] *But see Norman v. St. Clair*, 610 F.2d 1228 (5th Cir. 1980) and discussion, *infra*, at 1274, n.6.

■ In undertaking this review, we recognize that "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong * * *." *Beal v. Doe*, 432 U.S. 438, 447, 97 S.Ct. 2366, 2372, 53 L.Ed.2d 464 (1977); *New York Dept. of Soc. Services v. Dublino*, 413 U.S. 405, 421, 93 S.Ct. 2507, 2516, 37 L.Ed.2d 688 (1973); *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969). "But the courts are the final authorities on issues of statutory construction and 'are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute.'" (Citations omitted.)

*Volkswagenwerk v. FMC*, 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968).

42 U.S.C. § 1396a(a)(17) provides in pertinent part:

(a) A State plan for medical assistance must—

* * * * * *

(17) include reasonable standards * * *for determining eligibility* for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account *only such income* and resources *as are*, as determined in accordance with standards prescribed by the Secretary, *available to the applicant or recipient* * * * (C) *provide for reasonable evaluation of any such income or resources*, and (D) *do not take into account the financial responsibility of any individual* for any applicant or recipient of assistance under the plan *unless such applicant or recipient is such individual's*

**3.** *Decisions which allow the state to make a reasonable evaluation*:
*Norman v. St. Clair*, 610 F.2d 1228 (5th Cir. 1980) (approving "deeming" but ordering that "deeming" be done in a flexible manner taking into account the "expenses necessary for the spouse to live in the community" at 1241); *Gray Panthers v. Secretary of HEW*, 461 F.Supp. 319, 323 (D.D.C.1978), *appeal docketed*, No. 79–1334 (D.C.Cir. March 27, 1979) (citing *Herweg* with approval and approving consideration of spouse's income by reasonable standards); *Franssen v. Juras*, 406 F.Supp. 1375, 1379 (D.Or.1975) (barring deeming under old HEW regulation and allowing state to make a reasonable evaluation of income or reenact a relative responsibility law).

*Decisions which contain language which would appear to allow the state to make a reasonable evaluation*:
*Rubin v. Creasy*, No. C–1–78–810, slip op. at 17–18 (S.D.Ohio April 13, 1979) (temporary restraining order citing *Herweg* with approval and barring deeming of resources without a factual finding of actual availability); *Foard v. Gibson*, C–C–78–0319, slip op. at 4 (W.D.N.C. March 29, 1979) (barring "deeming" practices which disregard the actual living costs of the noninstitutionalized spouse); *Burns v. Vowell*, 424 F.Supp. 1135, 1141 (S.D.Tex.1976) (preliminary injunction barring deeming under old HEW regulation as to named plaintiffs; court indicated that income of a noninstitutionalized spouse can be considered through the application of reasonable standards).

*Decisions which do not indicate what recourse, if any, the state has for enforcing financial responsibility*:
*Allen v. Califano*, No. 78–0212, slip op. at 2 (D.Utah August 23, 1979) (barring "deeming" of income which is not in fact available); *Griswold v. Page*, TCA 77–0712, slip op. at 6–7 (N.D.Fla. May 20, 1977) (barring "deeming" by state as of effective date of the new HEW regulation); *Krygier v. Buscaglia*, Civ–78–83, slip op. at 8 (W.D.N.Y. May 2, 1979), *stay pending appeal*, No. 79–7386 (2d Cir. July 17, 1979) (district court preliminarily enjoined enforcement of state "deeming" regulation unless a hearing is first afforded to the noninstitutionalized spouse).

*Decisions which allow the state to use only its relative responsibility laws to enforce financial responsibility*:
*Brown v. Stanton*, 617 F.2d 1224 (7th Cir. 1980) ("proper method of enforcing spousal responsibility is through the state spousal support statute[s]" at 1232); *Hanke v. Nyhus*, 470 F.Supp. 742, 746 (D.Minn.1979) and *Advisory Council v. Kelly*, 470 F.Supp. 747, 752 (D.Minn.1979) (court found that accumulated property [rather than income] of noninstitutionalized spouse was not available unless it was contributed; however, state could pursue claim for contribution under its relative responsibility laws); *Manfredi v. Maher*, 435 F.Supp. 1106, 1115 n.18 (D.Conn.1977) (barring deeming and allowing state to enforce its relative responsibility laws).

*spouse* or such individual's child who is under age 21 \* \* \*.

(Emphasis supplied.)

The legislative history of § 1396a(a)(17) is set out in S.Rep.No. 404, 89th Cong., 1st Sess. 4, *reprinted in* [1965] U.S.Code Cong. & Admin. News, pp. 1943, 2018:

> Another provision is included that requires States to take into account only such income and resources as (determined in accordance with standards prescribed by the Secretary), are *actually available* to the applicant or recipient and as would not be disregarded (or set aside for future needs) in determining the eligibility for and the amount of the aid or assistance in the form of money payments for any such applicant or recipient under the title of the Social Security Act most appropriately applicable to him. Income and resources taken into account, furthermore, *must be reasonably evaluated* by the States. *These provisions are designed so that the States will not assume the availability of income which may not, in fact, be available or overevaluate income and resources which are available.* Examples of income assumed include support orders from absent fathers, which have not been paid or contributions from relatives which are not in reality received by the needy individual.

> The committee has heard of hardships on certain individuals by requiring them to provide support and to pay for the medical care needed by relatives. *The committee believes it is proper to expect spouses to support each other and parents to be held accountable for the support of their minor children and their blind or permanently and totally disabled children even though 21 years of age or older. Such requirements for support may reasonably include the payment by such relative, if able, for medical care.* Beyond such degree of relationship, however, requirements imposed are often destructive and harmful to the relationships among members of the family group. Thus, *States may not include in their plans provisions for requiring contributions from relatives other than a spouse or the parent of a minor child or children over 21 who are blind or permanently and totally disabled.* Any contributions *actually made* by relatives or friends, or from other sources, will be taken into account by the State in determining whether the individual applying for medical assistance is, in fact, in need of such assistance.

(Emphasis supplied.)

We note that although a state may not "assume the availability of income," Congress did specify that state "requirements for support may reasonably include the payment by [a spouse], *if able,* for medical care." However, "States may not include \* \* \* provisions for requiring contributions from relatives other than a spouse \* \* \*." But, "contributions *actually made* by relatives or friends \* \* \* will be taken into account \* \* \*."

In contrast, the relevant regulation 42 C.F.R. § 435.723 (October 1, 1978) indicates:

> § 435.723 Financial responsibility of spouses.

> (a) If the agency provides medicaid to SSI recipients, it must meet the requirements of this section in determining eligibility of aged, blind and disabled individuals under the optional coverage provisions of §§ 435.210, 435.211, and 435.231.

> \*    \*    \*    \*    \*    \*

> (d) If only one spouse in a couple applies or is eligible and they cease to live together, the agency must consider only the income and resources of the eligible spouse that are *actually contributed* to the eligible spouse after the month in which they cease to live together.

(Emphasis supplied.)

■ It is interesting to note that earlier HEW interpretation of § 1396a(a)(17) directly followed the statute. Those regulations 45 C.F.R. 248.3(b)(1) (October 1, 1975) stated "that only such income and resources as are actually available will be considered and that income and resources will be reasonably evaluated." We find that the term "available" in § 1396a(a)(17) when read in conjunction with the legislative history can-

not by any stretch of the imagination be translated into the "actually contributed" language of the current regulation. We find that HEW's interpretation of the statute is wrong. In effect it has substituted the words "actually contributed" for the statutory word "available." In our view, which is based partially on the legislative history quoted, the words "actually available" encompass funds which a spouse has available to contribute even though he or she does not actually contribute them to the spouse.

Furthermore, the statute specifically allows a state to consider the financial responsibility of a spouse in determining eligibility. Nothing in the statute or legislative history limits a state to enforcing this responsibility *only* through use of the state's relative responsibility law. We find that HEW's regulation nullifies the congressional intent of § 1396a(a)(17)(D), which indicates the financial responsibility of a spouse can be considered by a state.[4] Leaving the state of Iowa to sue retroactively and periodically for payments the noninstitutionalized spouse could reasonably afford, is to us an inequitable and burdensome result requiring repeated lawsuits against the same person. Furthermore, we will not force Iowa to grant Medicaid eligibility to a person whose spouse is extremely wealthy but whose income cannot be considered (unless actually contributed) after the first month of institutionalization. In addition to the legality of the question, a contrary result

would be most unfair to the noninstitutionalized spouse who does contribute what he can to the care of his spouse or to the taxpayers who pay for such care when they are not legally obligated to do so.

Both the Fifth Circuit in *Norman v. St. Clair*, 610 F.2d 1228 at 1238 (5th Cir. 1980) and Judge Pell in *Brown v. Stanton*, 617 F.2d 1224 (7th Cir. 1980) (dissenting in part) recognized the inevitable consequences of limiting a state's recourse to its relative responsibility laws. Judge Pell, in the course of an unusually short and cogent dissent stated:

> Under [that result], there is an open invitation for the spouse to decide that he or she does not wish to make the excess payment. In this era of inflation, and giving consideration to the human inclination not to pay out money when one doesn't have to, I think it reasonable to conclude that few would decline the invitation.

At 1234.

*The SSI–Medicaid Link*

Upon request of the court, HEW filed an amicus brief concerning the validity of the regulation, § 435.723. HEW argues that there is a link between SSI (Supplemental Security Income) and Medicaid eligibility standards based on 42 U.S.C. § 1396a(a)(10)(A). Based on this link, HEW believes that an SSI statute, 42 U.S.C. § 1382c(f)(1) dictates that income be "deemed" for at least the first month of

---

4. In *Batterton v. Francis*, 432 U.S. 416, 426, 97 S.Ct. 2399, 2406, 53 L.Ed.2d 448 (1977) a narrower scope of review for HEW regulations was established in a situation where the statute "expressly *delegated* to the Secretary the power to prescribe standards for determining what constitutes 'unemployment' for purposes of AFDC–UF eligibility." *Id.* at 425, 97 S.Ct. at 2405. This narrower review would cause the regulation to be "set aside only if the Secretary exceeded his statutory authority or if the regulation is 'arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.' 5 U.S.C. §§ 706(2)(A), (C)." *Id.* at 426, 97 S.Ct. at 2406.

However, subsection (D) of § 1396a(a)(17) must be read as a *limitation* on the Secretary's ability to prescribe standards for what constitutes "available" income under subsection (B)

of the statute. Furthermore in *Batterton* Congress had given HEW the specific task of defining *one term*, "unemployment," rather than the general delegation of establishing standards which are "consistent with the objectives of this subchapter." § 1396a(a)(17)(A). Specifically, the statute in *Batterton* "requires a participating State to provide assistance where a needy child 'has been deprived of parental support or care by reason of the unemployment (as determined in accordance with standards prescribed by the Secretary) of his father.' 42 U.S.C. § 607(a)." *Id.* at 419, 97 S.Ct. at 2402. In view of the difference in statutory mandate, we do not believe the standard of review under *Batterton* applicable to this case. However, even under the narrower test of *Batterton*, we would hold that the regulation must fall.

institutionalization where there is an ineligible noninstitutionalized spouse.[5] However, HEW does not cite *any* SSI statute that dictates the "actually contributed" language of the Medicaid regulation, § 435.723.

42 U.S.C. § 1396a(a)(10)(A), the Medicaid statute, indicates that a state plan for medical assistance must:

> (10) provide—
>
> (A) for making medical assistance available to all individuals receiving aid or assistance under any plan of the State approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV of this chapter, or with respect to whom supplemental security income benefits are being paid under subchapter XVI of this chapter;

The SSI statute on which HEW bases its argument is 42 U.S.C. § 1382c(f)(1), which states:

> (f)(1) For purposes of determining eligibility for and the amount of benefits for any individual who is married and whose spouse *is living with him* in the same household *but is not an eligible spouse* such individual's income and resources *shall be deemed* to include any income and resources of such spouse, *whether or not available* to such individual, except to the extent determined by the Secretary to be inequitable under the circumstances.

(Emphasis supplied.)

In response to HEW, appellants argue that the Medicaid statute, § 1396a(a)(17) does not allow *any* deeming, even for one month. Appellants state that the "SSI statute did not implicitly or explicitly alter the meaning and intent of the Medicaid provisions regarding availability." But appellants also state that if we reject their argument that § 1396a(a)(17) only allows actually contributed income to be considered, then appellants will agree with HEW that the SSI–Medicaid link justifies the current regulation.

We believe that the answer to this conflict lies in the language of § 1396a(a)(17), itself. Deeming by use of an arbitrary formula is not allowed. However, the statute does allow a reasonable evaluation of income available to the applicant or recipient, taking into account the financial responsibility of their spouse.

HEW, as previously indicated, cites no SSI statute which demands the use of the term "actually contributed" in the current regulation, 435.723, rather than the term used in the Medicaid statute (and previous HEW regulations) "available." The SSI statute HEW does cite, 42 U.S.C. § 1382c(f)(1) allows "deeming" by use of an arbitrary formula when an eligible person lives with their ineligible spouse. Apparently, HEW decided that where a couple does not live together (even involuntarily as in the institutionalized spouse's case) then the *opposite* of arbitrary "deeming" must apply—"actually contributed." However, this view fails to recognize the middle ground specifically provided for in § 1396a(a)(17) which the district court identified. That middle ground is a reasonable evaluation of available income and expenses, which reasonable evaluation is also the opposite of *arbitrary* "deeming."

---

**5.** HEW's brief considers at much greater length the validity of deeming for six months where there is an eligible couple under 42 C.F.R. § 435.723(*c*) but this subsection was not considered by the district court and we will not consider it here. However, it appears that the state of Iowa does not "deem" in the instance where both spouses are in such a low income bracket as to constitute an eligible couple. HEW justifies this six month "deeming" based on SSI provisions of 42 U.S.C. § 1382c(b) wherein an "eligible spouse" is one "who has not been living apart" from their eligible husband or wife "for more than six months." However, this six month rule was placed in the SSI statute to discourage eligible couples from voluntarily living separate in order to receive higher benefits. *See Mansfield v. Weinburger*, 398 F.Supp. 965, 969 (D.D.C.1975). Additionally, a 1976 amendment to 42 U.S.C. § 1382(e)(1)(B)(ii), Pub.L. 94–566, § 502 shows a congressional desire to consider individually the finances of an eligible couple where one spouse is institutionalized. We can find no logic in "deeming" for a longer period of time where there is an eligible *couple* than where only *one spouse* is eligible.

Additionally, the SSI statute, § 1382c(f)(1) provides that when an eligible spouse lives with her ineligible spouse, the eligible spouse's income is "deemed to include any income" of the ineligible spouse "whether or not available." Therefore, under the SSI statute there is no need to define the term "available"; its definition is essentially irrelevant. In contrast, the Medicaid statute, § 1396a(a)(17) demands that the standards drawn consider availability, thus, the effort to define "available" must be controlled by the Medicaid statute not the SSI statute.

Although *Norman v. St. Clair, supra,* and *Brown v. Stanton, supra,* involved § 209(b) states rather than an SSI-state such as Iowa, it appears that in *Norman* the Fifth Circuit reached essentially the same result as we do here, by reasoning from the SSI-states' situation *to* that of a "§ 209(b) state." The court in *Norman* in discussing the previously cited SSI statute, § 1382c(f)(1), indicates the following:

> Thus under certain circumstances Medicaid eligibility determinations in an "SSI state" must, because of the statutory mandate in the SSI legislation, take into account income that is deemed available, without regard to whether that income is actually contributed. Since this statutory mandate exists concurrently in the Medicaid law with the provision of 42 U.S.C. § 1396a(a)(17) directing that only income which is "available" be taken into account, it must be concluded that the income deemed to Medicaid applicants pursuant to provisions of law applicable to SSI states is available income. A concept of available income which includes income deemed to spouses in SSI states must also encompass income deemed[6] to spouses in the more restrictive programs of the § 209(b) states.

At 1238.

There are also additional reasons for finding SSI eligibility requirements inapplicable to the institutionalized spouse situation. In the institutionalized situation there is a "gap," which as we will explain, has been closed by states such as Iowa, by electing to cover optional groups.

Congress apparently linked SSI and Medicaid because a person who needs financial assistance to live (SSI) would naturally need financial assistance for medical care. However, under 42 U.S.C. § 1382(e)(1)(B)(i) the maximum SSI benefit payable to an institutionalized individual who does not have an eligible spouse is $300 per year or $25 per month reduced by nonexcluded income. Congress authorized this amount for institutionalized individuals "to enable them to purchase small comfort items not supplied by the institution." H.R.Rep.No. 92–231, 92nd Cong., 2d Sess. 3, *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 4989, 5136. However, since the $25 payment is reduced by nonexcluded income, it seems apparent that many institutionalized individuals would not be eligible for SSI benefits although they would be in dire need of Medicaid. This "gap" in the SSI–Medicaid scheme was remedied by providing that a state *may* provide Medicaid coverage to optional groups, including (1) those who are SSI eligible but do not receive benefits, 42 C.F.R. § 435.210; (2) those who are ineligible for SSI because of lower income standards used to determine eligibility for institutionalized individuals, but who would be SSI eligible if not institutionalized, 42 C.F.R. § 435.211; and (3) institutionalized individuals who are not SSI eligible but who have income below a certain level. 42 C.F.R. § 435.231 (federal funds are available only for those persons whose income is below 300 percent of the SSI individual benefit amount, 42 C.F.R. § 435.-1005).

In the situation where states such as Iowa elect to provide medical coverage to optional groups, some of whom are not eli-

---

**6.** The Fifth Circuit in *Norman* reached the result that "flexible" deeming by the state is mandated under the statute. That result is essentially similar to our approval of a reasonable evaluation of income. The difference is basically semantics. We believe that the term "deeming" connotes the use of an arbitrary or standardized formula and thus we decline to characterize our result as "reasonable deeming."

gible to receive SSI benefits, we find the rigid and costly imposition of unreasonable SSI regulations inappropriate and unfair to the taxpayer and welfare recipients of the state. Each state is limited in the total amount its legislature will appropriate. If it is forced to pay the entire cost of institutionalizing a person whose spouse has more income than he reasonably needs, optional coverage will of necessity be reduced or eliminated in other areas.

*AFDC Cases*

Appellants also note that the Supreme Court has struck down state AFDC provisions which "deem" the income of a MARS (man assuming the role of spouse) as available to the family without a showing of actual contribution. *Van Lare v. Hurley*, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975); *Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

Appellees, however, argue that these cases can be distinguished in that a MARS has no legal obligation of support. Appellants argue that although legal responsibility was an aspect of those cases, the Supreme Court's concern focused on the "actually available" language of AFDC regulations.

We agree with the state of Iowa that these cases are distinguishable in that no legal duty existed for the MARS to support or contribute to the family. The one exception to this absence of legal duty to support arose in *Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970). In *Lewis* the state of California had passed a law which required a MARS to make a financial contribution to the family. *Id.* at 553 n.2, 90 S.Ct. at 1283 n.2. The Supreme Court rejected "deeming" of the MARS income even where there was a legal duty because "the likelihood of the MARS' contributing his income to the children—even if legally obligated to do so—is sufficiently uncertain in the absence of the marriage tie, to prevent viewing him as a 'breadwinner' unless the bread is actually set on the table." *Id.* at 559, 90 S.Ct. at 1286.

The uncertainty of support presented in the MARS situation is simply not present in this case where the legal duty to support is created by marriage and by state statute, and the legislative history of § 1396a(a)(17) indicates that "[t]he committee believes it is proper to expect spouses to support each other * * *." Furthermore, the result reached by the district court—a reasonable evaluation—is less burdensome than the arbitrary "deeming" formula used to evaluate a MARS' income.

■ OTHER ISSUES: The district court found that Social Security benefits, Railroad Retirement Board annuities and Civil Service Commission annuities should be excluded from the sources of income the state may consider available to Medicaid applicants and recipients. *Herweg v. Ray*, 481 F.Supp. 914 at 916 (S.D.Iowa July 10, 1978). However, we believe these payments should be considered as available and their inclusion would constitute a reasonable evaluation of income within the meaning of § 1396a(a)(17). Furthermore, if the state's only recourse is through use of relative responsibility laws then these payments, no matter how large, could not be attached. *See Philpott v. Essex County Welfare Board*, 409 U.S. 413, 415–16, 93 S.Ct. 590, 591–592, 34 L.Ed.2d 608 (1973).

*The Result*

Our concern in this case, as expressed earlier, is the situation confronting the state when the noninstitutionalized spouse has more income than necessary for his own needs but chooses not to contribute any money to his institutionalized spouse who has little or no income. Under these circumstances the result advocated by other members of the court would force the state to first grant Medicaid eligibility to the institutionalized spouse, or take away the right of the state to require a contribution, and then sue the noninstitutionalized spouse retroactively and periodically for monies already expended by the state. Such a result is to us not only burdensome on the state but is contrary to the congressional intent reflected in § 1396a(a)(17). Plaintiffs have

argued that our result—a reasonable evaluation of available income—will lead to eviction of the institutionalized spouse when the noninstitutionalized spouse fails to contribute the required amount. However, at oral argument counsel for the state of Iowa indicated that no such evictions have taken place using the current method. If institutionalized spouses are declared ineligible or are required to make a partial contribution, as here, we believe the necessary contribution will be made by the spouse rather than permitting eviction. We also believe that many more persons would "choose" *not* to support their institutionalized spouses if permitted to do so by the HEW regulation and if the only recourse of a state was a possible suit for past due payments at some time in the distant future. The practical effect of upholding the appellants' position would be unfair to spouses who are properly making their contributions, would be very costly to the state of Iowa and would result in the diminution of welfare benefits to other more worthy recipients in Iowa's other welfare programs.

Our result also will eliminate the possibility of a totally inconsistent and inequitable situation occurring when the wealthier spouse is institutionalized. If for instance, Mr. Herweg had been institutionalized, but continued to receive income of $1,032 per month while leaving Mrs. Herweg at home with little or no income, the result would be devastating. Individualized assessment of income would make Mr. Herweg ineligible for Medicaid. This would occur because under Medicaid regulation, 42 C.F.R. § 435.-725, deductions for income for support of spouse and children are made *after* the initial eligibility decision. Furthermore, these deductions cannot exceed basic subsistence levels leaving the spouse at home in poverty. Plaintiffs at an earlier point in this litigation appeared concerned with this dichotomy. In correspondence between the parties contained in the record of the district court counsel for plaintiffs stated:

> If it is the institutionalized spouse with the greater income, a different kind of problem exists. * * * [C]ombining income will be advantageous to the couple;

in fact, it is a virtual necessity if the non-institutionalized spouse is to continue to live in the same environment. * * * Whether you [state of Iowa] phrase it as combining or not, it is important that a procedure be developed whereby income from the wealthier institutionalized spouse flows directly to the non-institutionalized spouse so that she can meet reasonable and necessary expenses.

### Conclusion

The judgment of the district court is affirmed except it is reversed as heretofore indicated as to the sources of income the state may consider as available to Medicaid applicants and recipients. The state of Iowa may continue to use the procedures for evaluation of income approved by the district court, but only until such time as HEW issues regulations which comport with the true meaning and intent of § 1396a(a)(17) as set forth herein.

GIBSON, Chief Judge, and BRIGHT and HENLEY, Circuit Judges, concur in this opinion.

McMILLIAN, Circuit Judge.

For the reasons discussed below, I am unable to agree with Judge Ross's opinion. In my view, both deeming according to an arbitrary formula and deeming according to a factual evaluation of received income and necessary expenses, as approved by the district court and Judge Ross's opinion herein, are impermissible.

### Standard of Review

As an initial matter, I accord greater weight to the interpretation made by HEW in the regulation at issue (42 C.F.R. § 435.-723) than Judge Ross does. The question before us is whether the regulation is proper, *not* how the statutory term should be interpreted. *E. g., Batterton v. Francis*, 432 U.S. 416, 424, 97 S.Ct. 2399, 2404, 53 L.Ed.2d 448 (1977). "Ordinarily, administrative interpretations of statutory terms are given important but not controlling significance." *Id.* However, Congress in § 1396a(a)(17)(B) has expressly delegated to

the Secretary of HEW the power to prescribe standards for determining what constitutes "available" income and resources. That provision states that a state plan must "provide for taking into account only such income and resources as are, *determined in accordance with standards prescribed by the Secretary*, available to the applicant" when determining Medicaid eligibility. 42 U.S.C. § 1396a(a)(17)(B) (emphasis added).

In a situation of this kind, Congress entrusts to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term. In exercising that responsibility, the Secretary adopts regulations with legislative effect. A reviewing court is not free to set aside those regulations simply because it would have interpreted the statute in a different manner.

The regulation at issue in this case is therefore entitled to more than mere deference or weight. It can be set aside only if the Secretary exceeded his statutory authority or if the regulation is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

*Batterton v. Francis, supra,* 432 U.S. at 425–26, 97 S.Ct. at 2405–2406 (case citations and footnotes omitted).

Thus, the question is whether the federal regulation itself is a reasonable interpretation of the statutory provision. Whether or not the federal regulation is less reasonable than the state's regulation is beside the point. Moreover, "[e]ven if this were a contest as to which is more reasonable, the federal regulation would prevail." *Aitchison v. Berger,* 404 F.Supp. 1137, 1149 (S.D. N.Y.1975), *aff'd without published opinion,* 538 F.2d 307 (2d Cir.), *cert. denied,* 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976).

*Factual Background*

This case involves a dispute over the interpretation of the word "available" in one part of the Medicaid statute, 42 U.S.C. § 1396a(a)(17)(B). It also involves the relationship between that statutory provision and another, 42 U.S.C. § 1396a(a)(17)(D), and certain regulations promulgated by the Secretary of HEW, in particular, 42 C.F.R. § 435.723.

Unfortunately, "[s]ince the welfare statutes now rival the Internal Revenue Code in complexity, one interprets them with less than robust confidence." *Lynch v. Philbrook,* 550 F.2d 793, 795 (2d Cir. 1977). "As program after program has evolved, there has developed a degree of complexity in the Social Security Act and particularly the regulations which makes them almost unintelligible to the uninitiated." *Friedman v. Berger,* 547 F.2d 724, 727 n.7 (2d Cir. 1976), *cert. denied,* 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977). This is particularly true in the present case, which required unraveling the relationship between two Social Security programs, Supplemental Security Income (SSI) and Medicaid. Moreover, an examination of case law reveals that the courts have been less than uniform in their analysis of deeming and related questions. *Compare Brown v. Stanton,* 617 F.2d 1224 (7th Cir. 1980), *with Norman v. St. Clair,* 610 F.2d 1228 (5th Cir. 1980).

Medicaid is a cooperative federal-state program established in 1965, in Title XIX of the Social Security Act (hereinafter the Act), 42 U.S.C. § 1396 *et seq.* The basic purpose of Medicaid is to enable each state, as far as practicable under the conditions in each state, to furnish medical assistance to certain needy persons whose income and resources are insufficient to meet the costs of necessary medical services. 42 U.S.C. § 1396; *e. g., Beal v. Doe,* 432 U.S. 438, 444, 97 S.Ct. 2366, 2370, 53 L.Ed.2d 464 (1977); *Hodgson v. Board of County Commissioners,* 614 F.2d 601 at 606 n.8 (8th Cir. 1980). The Medicaid program is jointly financed by the federal and state governments and administered by the states.

States are not required to institute a Medicaid program, but if they choose to do so, they must submit to the Secretary of HEW a satisfactory *state plan,* describing the nature and scope of the state's Medicaid program, which must fulfill all the requirements of the Act. 42 U.S.C. § 1396a(a)(1)–(40). The Secretary of HEW, through the Administrator of the Health Care Financ-

ing Administration, has promulgated various regulations which supplement the statutory provisions in providing the framework within which participating states must develop and operate their Medicaid programs. *E. g., Gray Panthers v. Secretary of HEW*, 461 F.Supp. 319, 320 (D.D.C.1978), *appeal pending sub nom. Administrator, Health Care Financing Administration v. Gray Panthers*, No. 79–1334 (D.C.Cir. 1980). Within the federal guidelines established by the federal statutory provisions and regulations, each participating state in its state plan determines eligible groups, types and ranges of services, payment levels for services, and administrative and operating procedures. "Participating states must, however, provide five general categories of medical services to individuals classified as *'categorically needy'* [see discussion below]: (1) inpatient hospital services; (2) outpatient hospital services; (3) other laboratory and X–ray services; (4) skilled nursing facilities, screening and treatment for persons under the age of 21, and family planning services and supplies; and (5) physicians services." *Norman v. St. Clair, supra*, at 1230–1231 (emphasis in original, footnote omitted). States must comply with the federal guidelines in order to be entitled to grants of federal funds in partial reimbursement for their expenditures in providing medical assistance. *E. g., Johnson's Professional Nursing Home, Inc. v. Weinberger*, 490 F.2d 841, 842–43 (5th Cir. 1974); *Hanke v. Nyhus*, 470 F.Supp. 742, 744 (D.Minn.1979).

The statutory provision at issue provides in part that a state plan must

include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient, . . . (C) provide for reasonable evaluation of any such income or resources, and (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse . . . . .

42 U.S.C. § 1396a(a)(17)(A)–(D). The Secretary of HEW has promulgated a regulation, 42 C.F.R. § 435.723(d), which interprets "available" to mean "actually contributed" in the case of couples separated by institutionalization. This regulation provides:

If only one spouse in a couple applies or is eligible and they cease to live together, the agency must consider only the income and resources of the ineligible spouse that are actually contributed to the eligible spouse after the month in which they cease to live together.

I do not agree that the Secretary's interpretation of the statutory term "available" is inconsistent with the statute or Congressional intent. As discussed below, the deeming regulation is based upon SSI eligibility criteria and is mandated by the Medicaid statute itself, which defines Medicaid eligibility by referring to SSI eligibility.

*Arguments of the Parties*

As I understand the arguments of appellants and the state of Iowa, neither party argues that the Secretary has exceeded her authority in promulgating this regulation. Such an argument would be of doubtful merit in view of the broad empowering provision of the Social Security Act, 42 U.S.C. § 1302, and the "reasonably related" standard of review. *E. g., Johnson's Professional Nursing Home, Inc. v. Weinberger, supra*, 490 F.2d at 844, *citing Mourning v. Family Publications Service*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973) (Truth-in-Lending Act).

Appellants argue that § 1396a(a)(17)(B), when read with the legislative history, mandates a contribution-in-fact or "actually available" standard. Appellants contend that deeming *on any basis for any length of time* is impermissible. The state of Iowa argues that its current practice of deeming using a factual evaluation of income actually received and expenses necessarily in-

curred is authorized by the financial responsibility provision § 1396a(a)(17)(D). This is the basic holding of the district court, 443 F.Supp. at 1319–20, and Judge Ross herein: that the regulation has "nullified" the intent of Congress in § 1396a(a)(17)(D) to permit a state to consider the financial responsibility of spouses. At 1272.

To answer appellants' argument that deeming is absolutely prohibited under the statute, I note that neither the statute nor the legislative history is so explicit. *What the statute says is that states may consider only such income and resources as are "available" to the applicant and expressly delegates to the Secretary the power to prescribe the standards for determining what constitutes available income and resources.* 42 U.S.C. § 1396a(a)(17)(B). The Secretary has interpreted "available" income and resources to include, in the case where one spouse has applied or is eligible for Medicaid in a couple separated by institutionalization of that spouse, only the income and resources of the ineligible spouse *actually contributed* to the institutionalized, eligible spouse *after the month in which they cease to live together or are separated by institutionalization,* 42 C.F.R. § 435.723(d). Thus, deeming is required in such a case for a certain period. In short, "available" is a statutory "term of art" which has been reasonably interpreted by the Secretary in the regulation at issue. Brief of the Department of HEW as amicus curiae at 17. *See Batterton v. Francis, supra,* 432 U.S. at 427–28, 97 S.Ct. at 2406–07 (administrative interpretation of statutory term "unemployment" in Title IV (AFDC) of the Social Security Act § 407(a), 42 U.S.C. § 607(a)).

The state of Iowa's argument that the deeming of income "without end" is permissible can be answered along similar lines. The Secretary has interpreted the statutory term "available" to require deeming for only limited periods, up to a maximum of six months, depending upon whether one or both members of a couple are otherwise eligible for SSI and "cease to live together" or separated by institutionalization. 42 C.F.R. § 435.723(b), (c), (d).

As noted by the district court below, 448 F.Supp. at 1318–19, and Judge Ross herein, at 1271, the voluminous legislative history of the Medicaid statute indicates that

> [t]hese provisions [§ 1396a(a)(17)(A)–(D)] are designed so that the states will not assume the availability of income which may not, in fact, be available or overevaluate income and resources which are available. Examples of income assumed include support orders from absent fathers which have not been paid or contributions from relatives which are not in reality received by the needy individual.

S.Rep.No. 404, 89th Cong., 1st Sess. 78, *reprinted in* [1965] U.S.Code Cong. & Admin. News, pp. 1943, 2018 (hereinafter S.Rep.No. 404). The Secretary's interpretation of "available" in the regulation as "actually contributed" accurately implements the expressed Congressional intent that states make Medicaid eligibility decisions with "real rather than presumed dollars." *Franssen v. Juras,* 406 F.Supp. 1375, 1378 (D.Or.1975).

The specific reference in the legislative history to the consideration of "available" income and resources supports *both* the Secretary's primary role in defining "available" and the Secretary's interpretation of "available" as contribution-in-fact or "actually contributed" in the regulation:

> Another provision [§ 1396a(a)(17)(B)] is included that requires States to take into account *only such income and resources as (determined in accordance with standards prescribed by the Secretary), are actually available to the applicant* or recipient *and as would not be disregarded* (or set aside for future needs) *in determining the eligibility for and the amount of the aid or assistance in the form of money payments* for any such applicant or recipient *under the title of the Social Security Act most appropriately applicable* to him [or her].

S.Rep.No. 404, *supra* (emphasis added). The deeming regulation treats the income and resources of an aged, blind or disabled

individual under Medicaid in exactly the same manner as SSI, which is the title of the Social Security Act (Title XVI) "most appropriately applicable" to an aged, blind or disabled individual. Under SSI, the income and resources of spouses is deemed to be available to each other as long as they share the same household and, if the couple is separated, for up to six months depending upon the eligibility status of each spouse. *See* discussion below.

Of course, the more difficult question raised by the state of Iowa's argument is whether the "actually contributed" language in the regulation implementing § 1396a(a)(17)(B) has in effect "nullified" § 1396a(a)(17)(D). *See* page 1272; *Franssen v. Juras, supra,* 406 F.Supp. at 1380 (Goodwin, J., dissenting). I agree with Judge Ross that § 1396a(a)(17)(D) specifically allows states to consider the financial responsibility of spouses (and parents). However,

> [i]t should be observed from the outset that § 1396a(a)(17)(D) does not *require* interspousal income attribution [deeming], nor does it stand for the proposition that the entirety of a spouse's income be automatically attributed to the other spouse in every instance. . . . Rather, the language in § 1396a(a)(17)(D), which refers to spouses, merely provides that the blanket prohibition which is imposed in that subsection upon such income attributions as are predicated on financial responsibility shall not act as a *total* barrier to all income attributions as between spouses.

*Manfredi v. Maher,* 435 F.Supp. 1106, 1109 n.5 (D.Conn.1977) (1972 option state) (emphasis in original); *see also Gray Panthers v. Secretary of HEW, supra,* 461 F.Supp. at 322; *Herweg v. Ray, supra,* 443 F.Supp. at 1319; *Burns v. Vowell,* 424 F.Supp. 1135, 1141 (S.D.Tex.1976); *Franssen v. Juras, supra,* 406 F.Supp. at 1378. *But see Norman v. St. Clair, supra,* at 1233–1234.

In my opinion, § 1396a(a)(17)(D) authorizes states to enforce the financial responsibility of spouses (and parents) but not to authorize states to do so in a manner other-

wise proscribed by the statute. *See Franssen v. Juras, supra,* 406 F.Supp. at 1379. Under this statutory provision, the states are authorized to enforce their financial responsibility laws against spouses (and parents), where applicable, for medical expenses covered under Medicaid. If a state is one of the so-called "§ 209(b) states," as discussed further below, that state may enforce spousal financial responsibility *either* indirectly through its relative responsibility laws, if any, *or* directly through its Medicaid regulations. *See Norman v. St. Clair, supra,* at 1233. However, if a state is an "SSI state," then the state may *only* enforce spousal financial responsibility *through its Medicaid regulations* to the extent permissible under the SSI statute. Any greater attempt to enforce spousal financial responsibility can only be effected through the state's relative responsibility laws, if any.

This construction of § 1396a(a)(17)(D) is not inconsistent with the legislative history. Referring to this statutory provision, the Senate Finance Committee report stated:

> The committee believes it is proper to expect spouses to support each other and parents to be held accountable for the support of their minor children and their blind or permanently disabled children even though 21 years of age or older. Such requirements for support may reasonably include the payment by such relative, *if able,* for medical care.

S.Rep.No. 404, *supra* (emphasis added). In my view, Congress did not intend to shield one spouse (or parents) from financial responsibility for the support of the other spouse (or minor children or adult blind or disabled children) simply because that spouse (or children) is covered by Medicaid. By comparison, Congress expressly precluded states from holding relatives other than spouses (or parents) financially responsible for medical expenses covered by Medicaid.

While "nothing in the statute or legislative history limits a state to enforcing this responsibility [of a spouse] *only* through the use of the state's relative responsibility law," at 1272 (emphasis in original), a state

cannot enforce its relative responsibility law in a manner which is otherwise inconsistent with federal statutes and regulations. *E. g., Townsend v. Swank,* 404 U.S. 282, 285, 92 S.Ct. 502, 504, 30 L.Ed.2d 448 (1971); *Rosado v. Wyman,* 397 U.S. 397, 408, 90 S.Ct. 1207, 1215, 25 L.Ed.2d 442 (1970) (AFDC). As will be discussed further below, in a SSI state, the extent and duration of deeming under Medicaid is limited by the statutory provisions and regulations of the Supplemental Security Income program, SSI, 42 U.S.C. § 1381 *et seq.* In my view, § 1396a(a)(17)(D) does not authorize states which link Medicaid eligibility directly to SSI eligibility (the "SSI–Medicaid link"), and are thereby required to use SSI eligibility requirements, to in effect impose an *additional* criterion for Medicaid eligibility. *See Gray Panthers v. Secretary for HEW, supra,* 461 F.Supp. at 321; *Manfredi v. Maher, supra,* 435 F.Supp. at 1112; *Franssen v. Juras, supra,* 406 F.Supp. at 1378.

*Enforcement of Spousal Financial Responsibility*

This analysis does not preclude the state from seeking some contribution from the *non* institutionalized spouse. *Herweg v. Ray, supra,* 443 F.Supp. at 1319–20. In fact, the prospect of a wealthy spouse abandoning an institutionalized spouse, thus evading his or her financial responsibility and "getting away with it" is something of a false issue. "Nothing in the [Social Security Act] precludes a state from exercising its financial responsibility laws . . . in cases of unwarranted neglect, where, for example, a wealthy individual refuses to support an institutionalized spouse, even though he or she would be financially able to do so." *Manfredi v. Maher, supra,* 435 F.Supp. at 1115 & n.18. The following comment and response, published with the 1977 spousal financial responsibility regulations (42 C.F.R. § 448.3(b) (1977)), further supports the continued availability of state financial responsibility laws and actions brought thereunder to enforce spousal obligations to support, where appropriate:

> *Comment* : The proposed regulations are contrary to State laws specifying financial responsibility of relatives.

> *Response* : Federal law authorizes the establishment of Federal standards with respect to Medicaid eligibility determinations. However, the Medicaid statute [and regulations do] not preclude States from enacting laws of general applicability, specifying the responsibility of spouses and parents with respect to *retroactive recovery* of the costs of medical assistance furnished by the State to eligible recipients.

42 Fed.Reg. 2686 (1977) (emphasis added).

Further, I note that the Medicaid statute, 42 U.S.C. § 1396a(a)(25), and regulations, 42 C.F.R. § 433.135, provide for determining and taking into consideration the legal liability of third parties to pay for Medicaid services. Although, in my opinion, this provision for third party liability was intended to encompass insurance liability rather than relative responsibility, I see no reason why relative responsibility, if applicable, could not be reached through this provision. For example, the state could bring a suit in state court under its relative responsibility law and obtain a support order. The support order could then be included among the economic resources of the Medicaid applicant or recipient in determining eligibility and state payment levels. However, the state may not withhold Medicaid benefits if the support payments will not be available to the Medicaid recipient within a reasonable time. 42 C.F.R. § 433.135(e)(2).

*Medicaid Program—Historical Structure*

At this point a brief history and description of the structure of the Medicaid program is necessary. Since the beginning of the Medicaid program in 1965, participating states were *required* to make all *recipients of cash assistance* eligible for Medicaid. A state was required to provide for "making medical assistance available to all individuals receiving aid or assistance under any plan of the State approved under title I, X, XIV, or XVI, or part A of title IV, [the former categorical assistance programs; see discussion below] or with respect to whom supplemental security income benefits are

being paid under title XVI [SSI] of this chapter." 42 U.S.C. § 1396a(a)(10)(A). *See generally,* 42 C.F.R. § 435.1. Before 1974, federally-assisted, state-administered welfare programs provided "cash assistance" to needy persons in four categories: (1) persons 65 or older (Title I, Old Age Assistance), (2) the blind (Title X, Aid to the Blind), (3) the disabled (Title XIV, Aid to the Permanently and Totally Disabled), and (4) certain types of families (Title IV A, Aid to Families with Dependent Children or AFDC). At state option, cash assistance to the aged, blind and disabled could be made available under a consolidated program, Aid to the Aged, Blind and Disabled (former Title XVI).

Because an individual had to be *both* categorically related (that is, eligible as aged, blind, disabled or a member of a family with children deprived of the support of at least one parent) *and* financially eligible on the basis of income and resources, recipients of cash assistance under one of the four categorical assistance programs were termed the "categorically needy."

States could also elect to cover under Medicaid selected groups of individuals who were financially eligible for cash assistance but ineligible because of certain other requirements or who were financially eligible but did not wish to receive cash assistance. For example, an individual may refuse SSI because it is welfare but accept Medicaid as medical assistance. Individuals covered under these *optional* coverage provisions were still considered "categorically needy" and were eligible for the same medical services provided under Medicaid to *recipients of cash assistance.*

States could limit Medicaid coverage to the "categorically needy" or could choose to *extend* Medicaid coverage to the aged, blind or disabled or members of families with dependent children who had too much income and/or resources to be eligible for cash assistance under the appropriate categorical assistance program but not enough for necessary medical care. Such individuals were termed the "medically needy." A state could use higher levels of income and

resources to determine Medicaid eligibility than those used to determine eligibility for cash assistance. The state was required to deduct an applicant's incurred medical expenses from income in determining eligibility for Medicaid. Unlike eligibility for cash assistance, Medicaid eligibility under the "medically needy" coverage option did not depend solely upon the absolute amount of an individual's income. Thus, the "medically needy" are persons whose income is too low to meet their medical expenses but too high to qualify directly for cash assistance. *E. g., Friedman v. Berger, supra,* 547 F.2d at 726. Because states would be covering more persons under the "medically needy" option, states were permitted to provide more limited medical services to the "medically needy" than those provided to the "categorically needy."

The "medically needy" Medicaid coverage option is not at issue in the present case. However, it should be noted that either an SSI state or a § 209(b) state may choose to cover the "medically needy" in addition to the mandatorily covered "categorically needy."

*The 1972 Amendments*

In 1972 the categorical assistance programs (except AFDC) were replaced by a new federal program (SSI) of cash assistance for the aged, blind and disabled under a new Title XVI. Social Security Amendments of 1972, Act of Oct. 30, 1972, Pub. L.No. 92–603, 86 Stat. 1381 (effective Jan. 1, 1974) (hereinafter the 1972 Amendments). The basic purpose of SSI was to assure a minimum level of income for persons who are aged, blind or disabled and without income and resources sufficient to maintain a standard of living at the established federal income level. 20 C.F.R. § 416.110. Federally administered and fully federally financed, SSI, effective January 1, 1974, replaced the previous, state-administered categorical assistance programs for the aged, blind and disabled in all jurisdictions except Puerto Rico, Guam and the Virgin Islands. 42 U.S.C. § 1381 *et seq.* (AFDC continued to be state-administered.) SSI established uniform, nationwide eligi-

bility standards and financial requirements, expanded the definition of disability to include individuals under 18 and lessened the variations in levels of assistance from state to state.

Most individuals who had been receiving cash assistance under the previous, state-administered categorical assistance programs that had used more liberal eligibility requirements than SSI were considered to qualify for SSI for purposes of Medicaid coverage. In addition, states that had been making higher payments to individuals under the old categorical assistance programs were required to pay the difference between the higher benefit and the SSI benefit in the form of mandatory state supplements.

States could also pay *optional* state supplements. 42 U.S.C. § 1382e; 20 C.F.R. § 416.2001–.2090. When the SSI program, which is wholly federally financed, was implemented, the states were no longer required to pay part of the cash assistance benefits to the aged, blind or disabled (except for the mandatory state supplements). Congress encouraged the states to use the funds they had previously used to provide categorical assistance to the aged, blind or disabled to supplement SSI payments to the aged, blind or disabled in the form of "optional state supplements." *See* H.R.Rep. No. 92–231, 92d Cong., 2d Sess. (1971), *reprinted in* [1972] U.S.Code Cong. & Admin. News, pp. 4989, 5185 (hereinafter H.R.Rep. No. 92–231). Congress later decided that the states could also provide Medicaid to individuals who receive optional state supplements. 42 C.F.R. § 435.230. By statutory definition, 42 U.S.C. § 1382e(a), optional state supplements are paid to individuals who receive SSI benefits or *who would be eligible* except for the level of their income to receive SSI benefits. Thus, the eligibility standards for an optional state supplement are identical to SSI except for income. In practice, the optional state supplement program is more inclusive than SSI.

Because SSI financial eligibility requirements are more liberal than the financial eligibility requirements of many of the old categorical assistance programs, many more individuals now qualify for cash assistance.

When Congress initially created SSI, it intended to require that all states provide Medicaid assistance automatically to all SSI recipients. Because this would have [automatically] resulted in a huge increase in the Medicaid rolls in the various states, and Congress feared that some states might opt out of the Medicaid program altogether, Congress added a provision which gave states the option of utilizing more restrictive [Medicaid] eligibility conditions. Under this provision, section 1902(f) of the [Social Security] Act, 42 U.S.C. § 1396a(f) [§ 209(b) of the 1972 Amendments], a state was permitted to use any financial eligibility condition [for Medicaid] which was no more restrictive than that in use under the state's January 1972 eligibility conditions for its categorical [assistance] programs.

*Gray Panthers v. Secretary of HEW, supra,* 461 F.Supp. at 321. Section 209(b) of the 1972 Amendments thus changed the basic Medicaid coverage requirement: the states are no longer required to provide Medicaid to *all* cash assistance (SSI) recipients; under § 1396a(f) the states can choose to provide Medicaid to a more restricted group of cash assistance recipients defined by the state's 1972 categorical assistance eligibility requirements. *See West v. Cole,* 390 F.Supp. 91 (N.D.Miss.1975).

In a § 209(b) state Medicaid eligibility is not dependent upon receipt of or eligibility for cash assistance (SSI benefits), but instead is determined with reference to a historical standard (which can be no more restrictive than the 1972 categorical assistance requirements). For example, in a § 209(b) state, a particular individual could receive SSI but not be eligible for Medicaid. (Such an individual could be eligible for Medicaid under a "spend-down" provision. 42 U.S.C. § 1396a(f); *e. g., Friedman v. Berger, supra,* 547 F.2d 724; *see also* H.R. Rep. No. 92–231, *supra,* at 5061.) In contrast, in an SSI state, an individual who receives SSI is *automatically* eligible for Medicaid. The same automatic Medicaid

eligibility also follows if the individual is eligible for (but does not actually receive) SSI and the state has elected to provide Medicaid under one of the "optional categorically needy" programs, for example, for the institutionalized, in an SSI state. This is the SSI-Medicaid link discussed below.

*Present Structure*

Under the present structure of Medicaid, the states must provide Medicaid coverage to the "categorically needy" under one of two major options: (1) to all SSI recipients or (2) to those cash assistance recipients who meet eligibility requirements more restrictive than those under SSI, but which are no more restrictive than the eligibility requirements in effect in January 1972 for the state's previous categorical assistance programs. 42 U.S.C. § 1396a(a)(10)(A), (f); 42 C.F.R. § 435.120, .121. Thirty-four states, including Iowa, and the District of Columbia have chosen to provide Medicaid coverage under the SSI option. These states are usually referred to as "SSI states." Fifteen states have chosen the other major option; these states may be referred to as "§ 1902(f) states" after the applicable section of the Social Security Act or "§ 209(b) states" after the applicable section of the 1972 Amendments or as "1972 option states" after the year designated as the historical standard. I will use the designation "§ 209(b) state."

States must also provide Medicaid coverage to AFDC recipients, recipients of mandatory state supplements, and to certain other groups of individuals who were eligible for Medicaid in 1973 under optional coverage provisions, such as "essential spouses" or individuals who were institutionalized in December 1973. 42 U.S.C. § 1396a(a)(10)(A); 42 C.F.R. § 435.-1(d)(4), .110(a), .130–.133. However, this mandatory Medicaid coverage is not at issue in the present case.

States may, as a matter of state option, choose to provide Medicaid coverage to certain other groups of individuals, the so-called "optional categorically needy." 42 U.S.C. § 1396a(a)(10)(C)(III); 42 C.F.R. § 435.200–.231. In general, these individuals meet the eligibility requirements for cash assistance programs but do not actually receive cash payments or would be eligible for cash payments if they were not in medical institutions. This is the "gap" discussed by Judge Ross. At 1273. Because Medicaid coverage depends on *receipt* of cash assistance, 42 U.S.C. § 1396a(a)(10)(A), the classification "optional categorically needy" allows the states to *selectively* extend Medicaid coverage to individuals who are otherwise eligible to receive cash assistance but not actual recipients.

The "optional categorically needy" classification is also important because the Medicaid statute requires the states to provide Medicaid coverage to the "medically needy" if they choose to provide Medicaid coverage to individuals other than the "categorically needy." 42 U.S.C. § 1396a(a)(10)(C). (As discussed above, the "medically needy" are aged, blind or disabled individuals or certain families and children whose income and resources are too high to qualify as "categorically needy" but insufficient to meet their medical expenses.) The states may choose to extend Medicaid coverage to the "medically needy," but choosing to do so substantially increases the number of Medicaid eligibles and the cost. However, because the "optional categorically needy" are considered among the "categorically needy," the "optional categorically needy" classification enables states to evade this restriction and *selectively* extend Medicaid coverage to certain groups (such as the institutionalized) which they feel are the most in need of state help without having to provide Medicaid to the "medically needy." 42 U.S.C. § 1396a(a)(10)(C)(III).

The state of Iowa provides Medicaid to the "categorically needy" under the SSI option and to several groups of the "optional categorically needy," including the institutionalized under 42 C.F.R. § 435.211, .231, and recipients of optional state supplements under 42 C.F.R. § 435.230. Iowa does not provide Medicaid coverage to the "medically needy."

*The SSI—Medicaid Link*

As discussed above, in SSI states, SSI eligibility requirements are in effect Medicaid eligibility requirements because all SSI recipients are automatically eligible for Medicaid. 42 U.S.C. § 1396a(a)(10)(A). This is the SSI—Medicaid link: Medicaid eligibility is predicated upon SSI eligibility.

To be eligible for SSI, an individual must be categorically related (aged, blind or disabled) and financially eligible. The income and resources requirements an SSI applicant must satisfy depend in part on whether the applicant has a spouse, whether the applicant and such spouse (if any) are living in the same household and whether such spouse is an "eligible spouse." Congress evidently made these distinctions in order "to take account of the fact that two people living together can live more economically than they would if each lived alone." H.R. Rep. No. 92–231, *supra*, at 5136. Accordingly, Congress set the maximum SSI benefit payable to a married couple composed of two eligible individuals (an "eligible couple") (concurrently $312.30/month) lower than the combined maximum SSI benefit payable to two eligible individuals (currently $208.20 × 2 = $416.40/month). (Comparable "single household" restrictions apply to children and parents.) The SSI definitions of "eligible individual" and "eligible spouse" and the treatment of separation and institutionalization under SSI, as discussed below, were drafted to take advantage of the *economy of scale of a common household*. *See Franssen v. Juras, supra*, 406 F.Supp. at 1378.

For the purposes of determining eligibility and the amount of benefits, the SSI statute expressly *requires* the deeming of income and resources from one spouse to the other spouse as long as they live together in the same household. 42 U.S.C. §§ 1382(a)(2), (b)(2); 1382c(f)(1). Deeming is mandated by the statutory definition of "eligible individual" when *both* spouses are aged, blind or disabled, 42 U.S.C. § 1382(a)(2), and by express statutory provision when only *one* spouse is aged, blind or disabled, 42 U.S.C. § 1382c(f)(1).

Only "eligible individuals" are entitled to SSI benefits. 42 U.S.C. § 1381a. The statutory definition of "eligible individual" provides that

(1) Each aged, blind or disabled individual *who does not have an eligible spouse* and—

(A) whose income, other than income excluded pursuant to section 1382a(b) of this title, is at a rate of not more than $1,752 (or, if greater, the amount determined under section 1382f of this title) for the calendar year 1974, or any calendar year thereafter, and

(B) whose resources, other than resources excluded pursuant to section 1382b(a) of the title, are not more than (i) in case such individual has a spouse with whom he is living, $2,250, or (ii) in case such individual has no spouse with whom he is living, $1,500,

shall be an eligible individual for purposes of this subchapter.

(2) Each aged, blind, or disabled individual *who has an eligible spouse* and—

(A) whose income (*together with the income of such spouse*), other than income excluded pursuant to section 1382a(b) of this title, is at a rate of not more than $2,628 (or, if greater, the amount determined under section 1382f of this title) for the calendar year 1974, or any calendar year thereafter, and

(B) whose resources (*together with the resources of such spouse*), other than resources excluded pursuant to section 1382b(a) of this title, are not more than $2,250,

shall be an eligible individual for purposes of this subchapter.

42 U.S.C. § 1382(a)(1), (2) (emphasis added). Section 1382f provides for cost-of-living increases. The current maximum income level is $2498.40 for an individual who does not have an eligible spouse under § 1382(a)(1)(A) and $3,747.60 for an individual who does have an eligible spouse under § 1382(a)(2)(A).) An "eligible spouse" is defined by the SSI statute as "an aged, blind or disabled individual who is the husband or wife of another aged, blind, or

disabled individual and *who has not been living apart from such other aged, blind, or disabled individual for more than six months.*" 42 U.S.C. § 1382c(b) (emphasis added).

Thus, in the case of a married couple composed of an "eligible individual" and an "eligible spouse" (that is, where *both* spouses are aged, blind or disabled), the applicant's income and resources are considered *together* with those of the eligible spouse in determining eligibility (for SSI). Deeming is required as well in determining the level of benefits:

> (2) *The benefit under this subchapter for an individual who has an eligible spouse* shall be payable at the rate of $2,628 (or, if greater, the amount determined under section 1382f of this title) for the calendar year 1974 and any calendar year thereafter, *reduced by the amount of income, not excluded pursuant to section 1382a(b) of this title, of such individual and spouse.*

42 U.S.C. § 1382(b)(2) (emphasis added). (The maximum SSI benefit payable to such an eligible couple is currently $3,747.60.) The income and resources of each spouse are *deemed* to be available to the other. This deeming will continue as long as they live together in the same household or until they have been living apart for six months. *E. g., Mansfield v. Weinberger*, 398 F.Supp. 965, 968–69 (D.D.C.1975). (Because of the definition of "eligible spouse," a spouse is no longer an "eligible spouse" after a separation of six months.) In other words, if *both* spouses are aged, blind or disabled, the income and resources of one are deemed to be available to the other as long as they in fact share the same household or until they have been separated for six months.

In the case of a married couple composed of an eligible individual and an *ineligible* spouse, Congress recognized that such a couple theoretically enjoys a similar economy of scale as long as they maintain one household and expressly provided that

> [f]or purposes of determining eligibility for and the amount of benefits for *any individual who is married and whose spouse is living with him in the same household but is not an eligible spouse, such individual's income and resources shall be deemed to include any income and resources of such spouse, whether or not available to such individual,* except to the extent determined by the Secretary to be inequitable under the circumstances.

42 U.S.C. § 1382c(f)(1) (emphasis added). In other words, Congress required that where an eligible individual lives in the same household with his or her ineligible spouse, then such eligible individual's income and resources shall include the income and resources of the ineligible spouse. (The actual computation of "deeming" is quite complex. *See* 20 C.F.R. § 416.1185 (deeming of income), .1202 (deeming of resources).) Deeming in the case of an eligible individual and ineligible spouse will continue as long as they live together in the same household. Thus, deeming stops in theory at the time such spouses no longer live together. However, any change in living arrangements (such as separation) will not be recognized by the SSI administrative process until the beginning of the month after the month in which the change in living arrangements occurred. (Evidently changes in eligibility status are administratively cognizable only at monthly intervals. Although redetermination of eligibility and amount of benefits is required at least once every twelve months, 20 C.F.R. § 416.222, a basic change in eligibility status without loss of eligibility will be reflected in a redetermination of payment amount for *each month* within a quarter. 20 C.F.R. § 416.-222.)

Couples may be separated by the institutionalization of one or both spouses. In the event one spouse (or both) is institutionalized, such spouses obviously no longer "live together in the same household." In making SSI *eligibility* determinations for spouses who are separated by institutionalization, the income and resources of one spouse are deemed to be available to the other spouse until the spouses have been separated for six months in the case of an eligible individual and eligible spouse or until the month

after the month during which one spouse was institutionalized in the case of an eligible individual and ineligible spouse.

In addition, the *amount of SSI benefits* changes when one spouse has been institutionalized for one month. 42 U.S.C. § 1382(e)(1)(B) provides:

> (B) In any case where an eligible individual or his eligible spouse (if any) is, throughout any month, in a hospital, extended care facility, nursing home, or intermediate care facility receiving payments (with respect to such individual or spouse) under a State plan approved under subchapter XIX of this chapter, the benefit under this subchapter for such individual for such month shall be payable—
>
>> (i) at a rate not in excess of $300 per year (reduced by the amount of any income not excluded pursuant to section 1382a(b) of this title) in the case of an individual who does not have an eligible spouse;
>>
>> (ii) in the case of an individual who has an eligible spouse, if only one of them is in such a hospital, home, or facility throughout such month, at a rate not in excess of the sum of—
>>
>>> (I) the rate of $300 per year (reduced by the amount of any income, not excluded pursuant to section 1382a(b) of this title, of the one who is in such hospital, home, or facility), and
>>>
>>> (II) the applicable rate specified in subsection (b)(1) [maximum individual benefit] (reduced by the amount of any income, not excluded pursuant to section 1382a(b) of this title, of the other)

. . . . .

Basically, the institutionalized spouse receives a much lower SSI benefit (maximum $25/month) and the *non* institutionalized spouse, if eligible, receives an SSI benefit at the rate applicable to an eligible individual (instead of half the rate applicable to an eligible couple). 42 U.S.C. § 1382(e)(1)(B)(i) (eligible individual who does not have an eligible spouse), (ii) (eligible individual who has an eligible spouse); 20 C.F.R. § 416.231.

In sum, under the SSI program, deeming is mandated by statute as long as the couple lives together in the same household. If the couple ceases to live together, deeming will cease at the beginning of the month after the month in which they cease to live together if only one spouse is aged, blind or disabled and after six months of separation if both spouses are aged, blind or disabled. (This difference in the duration of deeming is the result of the statutory definition of "eligible spouse" which sets a six month separation in part to discourage couples from living apart to collect more benefits.)

These periods of deeming should be familiar to the reader; they are precisely the periods of deeming specified in the Medicaid regulation at issue, 42 C.F.R. § 435.723. This congruence is not coincidental; it is compelled by the relationship between the SSI and the Medicaid programs. This is because the Medicaid regulation at issue establishes spousal financial responsibility criteria that apply, in an SSI state, when determining the Medicaid eligibility of certain groups of individuals who, though not in fact eligible to receive SSI benefits, are identified by referring to SSI eligibility. For example, 42 C.F.R. § 435.723 applies to *institutionalized individuals* who would be eligible to receive SSI benefits if they were not institutionalized (42 C.F.R. § 435.211) and institutionalized individuals who, because of the level of their income, would not be eligible to receive SSI benefits even if they were not institutionalized, but whose income is below a specified level (42 C.F.R. § 435.231). The Medicaid eligibility of these institutionalized individuals depends upon their SSI eligibility, except for the level of their income.

Why is there a special exception for Medicaid eligibility for the institutionalized? As noted by Judge Ross, at 1273–1274, there is a "gap" in the Medicaid coverage of the institutionalized. This "gap" is the product of the interaction between two statutory provisions: 42 C.F.R. § 1396a(a)(10)(A), the part of the Medicaid statute which links Medicaid eligibility to the *receipt* of cash assistance, and 42 U.S.C. § 1382(a)(1)(B), the SSI statutory provision

which sets the maximum SSI benefit payable to an institutionalized individual (technically, to an individual who is in a hospital, extended care facility, nursing home or intermediate care facility receiving Medicaid payments with respect to that individual's care) at the rate of $300/year ($25/month). *See* 20 C.F.R. § 416.231.

The SSI benefit level for the institutionalized was set at a maximum of $25/month because Congress anticipated that "most subsistence needs [of the institutionalized] are met by the institution [and paid for by Medicaid] and full benefits are not needed. Some payment to these people, though, would be needed to enable them to purchase small comfort items not supplied by the institution." H.R.Rep. No. 92–231, *supra*, at 5136. The $25/month maximum, which is reduced by nonexcluded income, sets a very restrictive income standard to determine eligibility for SSI benefits for the institutionalized. In practice, an institutionalized individual can receive up to $45/month in nonexcluded income before becoming ineligible for an SSI benefit. (There is a $20/month income disregard allowed under 42 U.S.C. § 1382a(b)(2)(A).)

For example, a majority of the institutionalized (that is, the elderly in nursing homes) receive some income, typically in the form of Title II Social Security benefits (Old Age, Survivors and Disability Insurance under § 201 of the Act, 42 U.S.C. § 401 *et seq.*). Because Title II benefits are nonexcluded income, *see* 42 U.S.C. § 1382a(a)(2)(B), (b), receipt of such benefits reduces the amount of the SSI benefit. If an institutionalized individual receives $30/month in Title II benefits, the amount of such individual's SSI benefit is $15/month ($25/month maximum SSI benefit reduced by $10, which is the $30/month Title II benefit less the $20/month income disregard). However, a Title II benefit of $45/month (or more) would reduce the SSI benefit to $0 ($25/month maximum SSI benefit reduced by $25, which is the $45/month Title II benefit less the $20/month income disregard). What this means is that any institutionalized individual who receives $45/month or more of no-

nexcluded income, which is a very small amount, is not eligible for SSI (technically, such an individual is not eligible to receive an SSI benefit) and thus loses his/her Medicaid eligibility. That individual has lost the SSI "link" to Medicaid eligibility.

Congress recognized the severe hardship this "gap" in Medicaid coverage imposed upon the institutionalized and amended the Medicaid statute in 1973. Act of Dec. 31, 1973 (Social Security Amendments of 1973), Pub.L. No. 93–233, § 13(a)(3), 87 Stat. 960 (codified in 42 U.S.C. § 1396a(a)(10)(C)(III); 42 C.F.R. § 435.211, .231; *see also* 119 Cong. Rec. 43227 (remarks of Rep. Ullman). States may close the "gap" by extending Medicaid eligibility to institutionalized individuals who are ineligible for SSI (or AFDC or an optional state supplement under 42 C.F.R. § 435.230) because of the lower income standards used under those programs to determine eligibility for institutionalized individuals, but who would be eligible for SSI (or AFDC or an optional state supplement) if they were not institutionalized. 42 C.F.R. § 435.211. In addition, states may also extend Medicaid eligibility to institutionalized individuals who are aged, blind or disabled and who, because of the level of their income, would *not* be eligible for SSI (or an optional state supplement) even if they were not institutionalized (income above $208.20/month for eligible individual who does not have an eligible spouse; income above $312.30 for eligible individual who has an eligible spouse), but whose income is below a certain level. 42 C.F.R. § 435.231, .1005 (maximum income standard under § 435.231 is 300% of the maximum SSI individual benefit of $208.20/month or $624.60; the maximum income standard set by the state of Iowa under this section is currently $600/month, effective July 1, 1979).

The higher income standard permissible under § 435.231 presumably is a reflection of the extraordinary costs of institutional care. *See* 42 C.F.R. § 435.722(a). Theoretically, the use of a higher income level for institutionalized individuals is based upon a fictitious optional state supplement where

no benefits are actually paid or received by the institutionalized individual. *See* 42 U.S.C. § 1382e(e) (reduction of SSI benefit by amount of optional state supplement in case of institutionalized individual); H.R. Rep. No. 92–231, *supra*, at 5186 (optional state supplements based upon special needs).

In sum, Medicaid eligibility in an SSI state is premised upon SSI eligibility. Medicaid eligibles (except for AFDC recipients or individuals otherwise eligible for AFDC or the medically needy) in an SSI state are either (1) SSI recipients; (2) optional state supplement recipients, who by definition are either SSI recipients or would be eligible for SSI except for the level of their income; (3) individuals who are eligible for SSI or an optional state supplement but who do not actually receive such benefits; (4) institutionalized individuals who would be eligible for SSI or an optional state supplement except for their institutional status; or (5) institutionalized individuals who would not be eligible for SSI or an optional state supplement because of the level of their income, even if they were not institutionalized, but whose income is nonetheless below a certain level. The financial eligibility requirements of SSI or the optional state supplement program apply to those who are actually receiving those benefits; the Medicaid regulations at issue (42 C.F.R. § 435.700–.740) apply only to individuals who are not receiving actual benefits. 42 C.F.R. § 435.700.

*Post-eligibility Treatment: Allocation of Income of Institutionalized Individuals Toward Cost-of-Care*

It should be noted that 42 C.F.R. § 435.-725 requires that the income of an institutionalized spouse in excess of a personal needs allowance ($25/month) (42 C.F.R. § 435.725(c)(1)) and a maintenance allowance for the support of the noninstitutionalized spouse (42 C.F.R. § 435.725(c)(2)) or the family (42 C.F.R. § 435.725(c)(3)) be allocated toward the cost-of-care of the institutionalized spouse. In those cases where the institutionalized spouse is the source of most of the couple's or family's income, the allocation of patient income toward cost-of-care does impose significant hardships upon the noninstitutionalized spouse or family, who are thus constrained to live on a "maintenance allowance." The maintenance allowances are generally based on the income standards used to determine Medicaid eligibility and correspond to welfare subsistence levels. *E. g.*, 42 C.F.R. § 435.-725(c)(3)(iii) (maximum family maintenance allowance is state AFDC level or medically needy income standard). To this extent, appellants and Judge Ross, at 1275, are accurate in observing that the "price" of Medicaid coverage for the institutionalized spouse is a rather frugal existence for the other spouse or family.

The allocation of income toward cost-of-care *equalizes* the financial condition of the spouses and/or families of institutionalized Medicaid recipients. For example, because of the optional Medicaid coverage provisions, in particular 42 C.F.R. § 435.231, an institutionalized individual may be eligible for Medicaid even though his or her income greatly exceeds the maximum SSI financial eligibility level. In the absence of the allocation of income toward cost-of-care required by 42 C.F.R. § 435.725(c), the spouse or family of such an institutionalized individual who qualified for Medicaid under the higher income option would be much better off than the spouse or family of an institutionalized individual who qualified under the SSI income option (42 C.F.R. § 435.211). The "price" of Medicaid coverage for the institutionalized individual under the higher income option is that his or her spouse or family exists upon the income of the SSI spouse or family. In effect, the spouse or family pays for many thousands of dollars' worth of institutional care with the balance of the institutionalized individual's income above the spouse or family maintenance allowance.

Consider the following examples. I have drastically simplified the calculations. Further assume $200/month is the maximum individual SSI benefit and that the state has a higher income option standard for institutionalized individuals of $600/month under 42 C.F.R. § 435.231.

(1) A and B are married. No children. A is disabled and institutionalized. B is not aged, blind or disabled. A has $600/month income. B has no income.

A just meets the higher income option standard.

A's allocation of income toward cost-of-care is $375. ($600 less $25 personal needs allowance less $200 maximum spouse allowance)

(2) Same facts except A has income of $400/month.

A meets the higher income option standard.

A's allocation toward cost-of-care is $175. ($400 less $25 personal needs allowance less $200 maximum spouse allowance)

(3) Same facts except A has income of $200/month.

A meets the SSI income option standard under 42 C.F.R. § 435.211.

A's allocation toward cost-of-care is 0. ($200 less $25 personal needs allowance less $200 maximum spouse allowance; B receives the $175 balance)

Thus, the allocation toward cost-of-care increases as the institutionalized individual's income exceeds the SSI income option level.

Moreover, Mr. Herweg's ineligibility for Medicaid, the "devastating result" described on page 1275, is simply the consequence of an individual having too much income to qualify for Medicaid, even under the higher income option for the institutionalized. Mr. Herweg's gross monthly income ($1,350) exceeds the federal income maximum of $624.60 per month (300% of the maximum SSI individual benefit of $208.20). He is therefore ineligible for Medicaid under the higher income option for institutionalized individuals (42 C.F.R. § 435.231) and the optional state supplement (42 C.F.R. § 435.230) because of the level of his income. (Further, Mr. Herweg's net monthly income exceeds Iowa's maximum of $600 per month. After deduction of the $20 income exclusion and the earned income exclusion of $65 plus half the remaining amount, Mr. Herweg's net monthly income is $632.50.) Such a result is really an argument in favor of the state electing to provide Medicaid to the medically needy, who by definition have medical expenses which exceed their income, or Congressional amendment of Title XIX to provide Medicaid to individuals, regardless of income, who suffer catastrophic illness and/or require institutional care. Quite frankly, the cost of institutional care is probably beyond the economic resources of all but the wealthiest individuals.

*Medicaid Eligibility Determination of Elvina Herweg*

Elvina Herweg is permanently and totally disabled and requires institutional care. It appears from the record that she has no independent income, such as a pension or Social Security benefits. Darrell Herweg is not aged, blind or disabled. Elvina Herweg was institutionalized on November 1, 1976. Darrell Herweg applied for Medicaid on her behalf on January 20, 1977, long after the month in which they ceased to live together (November 1976). As of January 20, 1977, Elvina was eligible for the maximum $25/month SSI benefit for institutionalized individuals and, as an SSI recipient, eligible for Medicaid. As of December 1, 1976, the month after the month they ceased to live together, the state could not deem the income or resources of Darrell Herweg to be available to his wife.

However, if Darrell Herweg had submitted the Medicaid application on November 1, 1976, Elvina's income and resources for the purposes of determining Medicaid eligibility would have included Darrell Herweg's income and resources to the extent specified in the SSI deeming regulation, 20 C.F.R. § 416.1185, and Medicaid deeming regulation for SSI states, 42 C.F.R. § 435.723. The state would have made one Medicaid eligibility and allocation toward cost-of-care determination as of November 1, 1976, and a second as of December 1, 1976 (change in living arrangements).

I believe the SSI (and thus Medicaid) calculations for the first month (November 1976) would have been:

Darrell Herweg – gross income per month ............................................... $1,350.00

(SSI income defined in 20 C.F.R. § 416.1102(a); earned income refers

to gross amount of wages under 20 C.F.R. § 404.429(c))

| | |
|---|---:|
| Reduced by an allocation for each child under 21 and neither blind nor disabled – 3 children | –312.30 |
| (amount of allocation is difference between SSI benefit rate for an individual and that for a couple; $312.30–$208.20 = $104.10) (20 C.F.R. § 416.1185(a)(1)) | |
| | $1,037.70 |

Because this amount exceeds one-half of the SSI benefit rate for an eligible individual ($208.20 × ½ = $104.10), all of this amount is deemed to be available to Elvina Herweg. 20 C.F.R. § 416.1185(a)(2), (3).

This amount is further reduced by appropriate income exclusions to determine "countable income." 20 C.F.R. § 416.1185(a)(3)(ii). "Countable income" is the amount of income used to determine an applicant's eligibility for SSI and, if eligible, the amount of benefits. 20 C.F.R. § 416.1115(a).

| | |
|---|---:|
| Balance | $1,037.70 |
| Reduced by $20 income exclusion (20 C.F.R. § 416.1145(b)(9), .1165) | –20.00 |
| Reduced by earned income exclusion ($65 plus half remaining amount; 20 C.F.R. § 416.1145(b)(10), .1167) | –541.35 |
| | $476.35 |

Because this amount exceeds the SSI benefit payable to an eligible couple ($312.30), Elvina Herweg would not be eligible for SSI or Medicaid as of November 1, 1976, if the state only provided Medicaid to SSI recipients. 20 C.F.R. § 416.1185(a)(3)(iii).

However, Iowa has elected to use a higher income standard in the case of institutionalized individuals. 42 C.F.R. § 435.231. (The regulations technically require the higher income standard be applied effective with "the first full month of institutionalization," 42 C.F.R. § 435.722(c). Administratively, however, states are considered to be in compliance with the regulations if Medicaid eligibility is determined as of the day of institutionalization.) Under the higher income standard, a Medicaid applicant must in effect meet two income tests: (1) the applicant's gross monthly income must be below the federal income maximum of $624.60/month (300% of the maximum SSI individual benefit, $208.20) (42 C.F.R. § 435.1005), and (2) the applicant's net income (gross monthly income less applicable SSI disregards) is less than Iowa's higher income standard of $600/month. 42 C.F.R. § 435.722(a), (b).

Because Elvina Herweg has no other income, her gross monthly income consists of the amount of income deemed to be available to her from her husband, $476.35, which is within the federal income maximum ($624.60). Deemed income is considered unearned income and is reduced by the $20 per month income exclusion (20 C.F.R. § 416.1165). Elvina's net income of $456.35 per month is less than Iowa's higher income standard of $600 per month. She would thus be eligible for Medicaid as of November 1, 1976.

Further, under 42 C.F.R. § 435.725, Elvina's allocation toward cost-of-care (client liability) would be $476.35 (total income) less $25.00 (minimum amount protected for an institutionalized individual), or $451.35. No additional allowances for maintenance of her husband or children would be made because maintenance allowances were already included in the deeming calculations under 20 C.F.R. § 435.1185.

Because deeming would have ceased as of December 1, 1976, Elvina's eligibility for SSI would have been redetermined *as an individual* as of December 1, 1976. She also would have been institutionalized for one month by that date. Because she has no other income, she would have easily qualified under the lower income standards for institutionalized individuals, $25/month reduced by nonexcluded income. (Even assuming she had some independent income, as long as her gross monthly income was less than $624.60 and her net monthly income was less than $600, she would have been eligible for Medicaid in Iowa under the higher income option for institutionalized individuals.) Because Elvina has no income as of December 1, 1976 (deeming ceases), she has no income from which any allocation toward cost-of-care can be made.

Her allocation toward cost-of-care is thus $0.

*Income Exclusions*

As noted by Judge Ross, 1274–1275, I agree that Social Security benefits, Railroad Retirement Board annuities and Civil Service Commission annuities should be *included* as unearned income in determining SSI and Medicaid eligibility and amount of benefits. *See* 42 U.S.C. § 1382a(1)(2)(B); 20 C.F.R. § 416.1101(a) (income in general), .1130 (types of periodic payments included in unearned income), .1146 (exclusions from income provided by other federal statutes), .1236 (exclusions from resources provided by other federal statutes).

*Conclusion*

I would hold that the state of Iowa as an SSI state cannot deem the income and resources of one spouse to be available to the other in making Medicaid eligibility determinations other than to the extent and for the duration specified in the applicable regulations, 42 C.F.R. § 435.700.725.

LAY, Chief Judge and HEANEY and STEPHENSON, Circuit Judges, concur in the result reached in Circuit Judge McMILLIAN'S opinion.

