**Ruth FRIEDMAN et al.,
Plaintiffs-Appellants,**

v.

**Stephen BERGER, Individually and as Commissioner of the New York State Department of Social Services, et al., Defendants-Appellees.**

No. 84, Docket 76–7187.

United States Court of Appeals,
Second Circuit.

Argued Oct. 21, 1976.
Decided Dec. 8, 1976.

John C. Gray, Jr., Brooklyn, N. Y. (Lloyd Constantine, and Brooklyn Legal Services

Corp., Brooklyn, N. Y., of counsel), for plaintiffs-appellants.

Robert S. Hammer, Asst. Atty. Gen. of N. Y., New York City (Louis J. Lefkowitz, Atty. Gen., and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for defendants-appellees.

Before FRIENDLY, HAYS and MULLIGAN, Circuit Judges.

FRIENDLY, Circuit Judge.

This appeal raises the question how much personal income can be retained by individuals who are receiving assistance under the New York State Medicaid program [1] while in a hospital or nursing home for extended care and in particular whether a New York State Medicaid regulation restricting the amount of retained income to $28.50 per month is valid under the federal Social Security Act and pertinent regulations.

■ Plaintiffs are recipients of New York State Medicaid who are aged, blind, or chronically ill, have been in hospitals or nursing homes for one month or longer, and qualify as "medically needy"; this designation [2] means that their annual income is too low to meet their medical expenses including the enormous cost of institutional care but too high to qualify them for the federal cash grant program providing "Supplemental Security Income" (SSI) for the aged, blind, and disabled.[3] By federal law the provision of Medicaid assistance to such persons is a matter of state option, 42 U.S.C. § 1396a(a)(10)(C), but must conform to federal requirements. Aged, blind, and disabled patients whose personal incomes are low enough to qualify under the SSI program are considered "categorically needy" [4] and must be included within any state Medicaid plan, 42 U.S.C. § 1396a(a)(10)(A).

At issue is how much personal income of "medically needy" Medicaid recipients such as plaintiffs can be required to be applied toward the cost of institutional care as a condition of their receiving Medicaid. The New York regulation under challenge is 18 New York Code of Rules and Regulations (NYCRR) § 360.5(e), which provides that a Medicaid recipient who is "receiving chronic care in a medical institution or intermediate care facility" and has no dependents can retain only $28.50 per month of his income for personal expenses. "[A]ll resources in excess . . . shall be utilized to meet the cost of medical assistance for that applicant or recipient . . . ." [5] In Social

---

1. Medicaid, established by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396g, is a medical assistance program jointly funded by the federal and state governments. Federal payments are available to states which secure HEW approval of plans for medical assistance. New York State participates in the Medicaid program pursuant to New York Social Services Law (NYSSL) §§ 363–369.

2. 45 C.F.R. § 248.1(a)(2)(i); see NYSSL § 366(1)(a)(5).

3. The SSI program, established under 42 U.S.C. §§ 1381–1383c, provides aid to aged, blind, or disabled persons whose income does not exceed $166 per month. 42 U.S.C. § 1382(a)(1)(A). If, like plaintiffs, such aged, blind, or disabled persons are confined to a hospital, nursing home or intermediate care facility for one month or longer, the income cut-off is lowered to $45 per month because of the decreased costs of their maintenance to themselves. 42 U.S.C. § 1382(e)(1)(B)(i).

4. 45 C.F.R. § 248.1(a)(1)(i); see NYSSL § 366(1)(a)(2).

5. 18 NYCRR § 360.5(e) provides in pertinent part:

> If an applicant or recipient [of Medicaid] is receiving chronic care in a medical institution or intermediate care facility, all resources in excess of those exempt from consideration in accordance with paragraph (a) of subdivision 2 of section 366 of the Social Services Law and $28.50 per month for personal expenses shall be utilized to meet the cost of medical assistance for that applicant or recipient
>
> . . . . .

NYSSL § 366(2)(a) concerns the disregard of certain property and, for persons with legal dependents, a certain amount of income for the dependents' support. The named plaintiffs here have not specified whether they and members of their proposed class are without dependents, although such seems to be implied by their averment that they are permitted to keep only $28.50 per month. In any event, the income disregard permitted by NYSSL § 366(2)(a) is not of relevance to the question of plaintiffs' income disregard for their *own* maintenance needs.

Security idiom, the regulation requires institutionalized Medicaid recipients such as plaintiffs to "spend down" to all but $28.50 per month of their income. Putting constitutional arguments aside, plaintiffs urge that this regulation is deficient for two reasons: first, that the Social Security Act provides medically needy Medicaid recipients with an express guarantee of at least $45 retained income per month; and second, that, even if this not be so, the Social Security Act requires that the medically needy be aided under standards "comparable" to those applied to categorically needy Medicaid recipients who are allegedly permitted to retain more than $28.50 personal income under the New York State program.

■ Plaintiffs are appealing here from a decision of Judge Wyatt in the District Court for the Southern District of New York, 409 F.Supp. 1225, denying their motion to certify as a class all Medicaid recipients in chronic care institutions with personal incomes in excess of $45 and a preliminary injunction against enforcement of 18 NYCRR § 360.5(e) and directing dismissal of the complaint. Jurisdiction is adequately

based on 28 U.S.C. § 1343(3) because of plaintiffs' dormant constitutional claim.[6] We affirm the dismissal of the complaint, though on somewhat different reasoning; in light of this we do not reach the question of class certification.

### I

■ Explanation of plaintiffs' first claim requires a foray into statutory provisions and HEW regulations of labyrinthine complexity.[7] Under Title XIX of the Social Security Act, the Medicaid legislation, a state which wishes to participate in Medicaid must submit a plan for providing such assistance that conforms with federal law. 42 U.S.C. § 1396a(a)(17) requires that:

A State plan for medical assistance must—

· · · · ·

(17) include reasonable standards . . . *for determining* eligibility for and *the extent of medical assistance under the plan* which . . . (B) provide for *taking into account only such income and resources* . . . (in the case of any applicant or recipient who would, ex-

---

6. Plaintiffs' complaint urged constitutional as well as statutory grounds. This was that New York enforced a more severe spend-down requirement on medically needy than on categorically needy and that this was an arbitrary classification in violation of the equal protection and due process clauses of the Fourteenth Amendment. Facially, under the liberal view taken in *Goosby v. Osser*, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973), this raised a constitutional claim sufficiently substantial to vest the district court with jurisdiction over both it and the statutory claims, see *Hagans v. Lavine*, 415 U.S. 528, 537–40, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Jurisdiction having been thus acquired, it did not cease because further examination of the law and the facts necessary to determine the statutory claim showed that the constitutional claim was in truth insubstantial, see note 16 *infra*. The decision of a divided panel in *Murrow v. Clifford*, 502 F.2d 1066 (3 Cir. 1974), that although a single judge can uphold a pendent statutory claim, he cannot deny it where the constitutional claim was both facially and factually substantial, *is not to the* contrary. We take no position with respect to that decision, see *Doe v. Beal*, 523 F.2d 611, 623–24 (3 Cir. 1975) (en banc), *certiorari granted*, 428 U.S. 909, 96 S.Ct. 3220, 49 L.Ed.2d

1216 (1976); *Murrow v. Clifford*, 404 F.Supp. 999, 1001 n.4 (D.N.J.1975); *Parks v. Harden*, 504 F.2d 861, 866–67 (5 Cir. 1974), *vacated on other grounds*, 421 U.S. 926, 95 S.Ct. 1651, 44 L.Ed.2d 84 (1975); 88 Harv.L.Rev. 1028, 1030–31 (1975); 64 Geo.L.J. 113, 118–22 (1975); 85 Yale L.J. 564, 571 n.42 (1976); 66 F.R.D. 495, 510–11. Hopefully, in light of the blessed demise of 28 U.S.C. §§ 2281 and 2282 and, in largest part, § 2284 resulting from P.L. 94–381, we may never need to do so.

7. As program after program has evolved, there has developed a degree of complexity in the Social Security Act and particularly the regulations which makes them almost unintelligible to the uninitiated. There should be no such form of reference as "45 C.F.R. § 248.-3(c)(1)(ii)(B)(2)" discussed below; a draftsman who has gotten himself into a position requiring anything like this should make a fresh start. Such unintelligibility is doubly unfortunate in the case of a statute dealing with the rights of poor people. An indispensable service is performed by attorneys like those representing the plaintiffs here, who advance tenable claims with clarity and courtesy—even if, as in this case, not with success.

cept for income and resources, be eligible . . . to have paid with respect to him supplemental security income benefits under subchapter XVI of this chapter [the SSI program] *as would not be disregarded* (or set aside for future needs) *in determining his eligibility for such aid, assistance or benefits* . . .. (Emphasis added).

In other words, for persons such as plaintiffs, who would be eligible to receive SSI benefits because of their age, blindness or disability were it not for their income, state standards must provide that income which is disregarded in determining SSI eligibility also be disregarded in determining eligibility for and the extent of medical assistance under Medicaid. This statutory requirement is supplemented by HEW regulation, 45 C.F.R. § 248.3(c)(3)(ii)(A).[8]

■ Unfortunately for the plaintiffs, however, when one turns to the portion of the Social Security Act governing disregards under the SSI program, Title XVI, one discovers that only $20 per month is subject to such disregard. 42 U.S.C. § 1382(e)(1) reads as follows:

*Limitation on eligibility of certain individuals.*

(e)(1)(A) Except as provided in subparagraph (B), no person shall be an eligible individual . . . for purposes of this subchapter [Title XVI] with respect to any month if throughout such month he is an inmate of a public institution.

(B) In any case where an eligible individual . . . is, throughout any month, in a hospital, extended care facility, nursing home, or intermediate care facility receiving payments (with respect to such individual . . .) under a State plan approved under subchapter XIX [Medicaid] of this chapter, the bene-

fit under this subchapter [XVI] for such individual for such month shall be payable—

(i) at a rate not in excess of $300 per year (*reduced by the amount of any income not excluded pursuant to section 1382a(b) of this title*) in the case of an individual who does not have an eligible spouse; . . .. (Emphasis added).

42 U.S.C. § 1382a(b) in turn provides that:

In determining the income of an individual [for purposes of Title XVI] . . . there shall be excluded—

. . . . .

(2)(A) The first $240 per year (or proportionately smaller amounts for shorter periods) of income (whether earned or unearned) other than income which is paid on the basis of the need of the eligible individual; . . ..

As these sections show, for SSI purposes only the first $240 income per year, or $20 per month is disregarded in establishing statutory eligibility for SSI payments. Any income above that amount is not disregarded, and reduces accordingly the size of the SSI payment. Though institutionalized SSI recipients also receive a $25 benefit payment each month as their aid under the SSI program, such program benefits have no relation to the "income and resources" whose "disregard" under the SSI program is used as a benchmark in § 1396a(a)(17) of the Medicaid legislation; indeed, as the language of the latter section makes clear, the very purpose of the disregard of income and resources in Title XVI is to establish the proper size of SSI benefits.

What this means, of course, is that medically needy Medicaid recipients in New York State already receive the full equivalent of the SSI eligibility disregard. The New York State regulation makes clear

---

8. The regulation provides:

(c) With respect to the medically needy, the State plan [under Title XIX of the Social Security Act] must:

. . . . .

(3) Provide that all income and resources will be considered in establishing eligibility, and for the flexible application of income to medical costs not in the plan, and for pay-

ment toward the medical assistance costs. In considering all income and resources when establishing eligibility, the State plan must provide for:

. . . . .

(ii) In the case of the aged, blind, or disabled, the highest of:
(A) *The disregards applied in title XVI* . . . .. (Emphasis added).

that no one receiving chronic care in a medical institution under the state Medicaid program shall be required to "spend down" lower than $28.50 per month, considerably above the $20 minimum mandated by §§ 1396a(a)(17), 1382(e)(1)(A) and (B), and 1382a(b), and 45 C.F.R. § 248.3(c)(3)(ii)(A). Though 42 U.S.C. § 1396a(a)(17) forbids taking into account in the Medicaid program any "income and resources" which would be disregarded in SSI eligibility determinations ($20 per month), and 45 C.F.R. § 248.3(c)(3)(ii)(A) requires use of "the highest of . . . [t]he disregards applied in title XVI," neither provision forbids taking into account income equivalent to the SSI benefits themselves ($25 per month).

## II

Plaintiffs' alternative claim is that the New York State regulation violates a "comparability" requirement of the Social Security Act because it purportedly limits the retained income of "medically needy" institutionalized Medicaid recipients such as plaintiffs more stringently than it does the retained income of "categorically needy" institutionalized Medicaid recipients. This alleged discrimination is likewise the basis of plaintiffs' equal protection claim.

The comparability requirement is derived from two sources. The first is 42 U.S.C. § 1396a(a)(17):

**9.** 45 C.F.R. § 248.3(c) provides:
With respect to the medically needy, the State plan must:
(1) Provide levels of income and resources for maintenance, in total dollar amounts, as a basis for establishing financial eligibility for medical assistance. Under this requirement:

(ii) . . . the income levels for maintenance must be, as a minimum, at the higher of the levels of the payment standards generally used as a measure of financial eligibility in the money payment programs, that is:

(B) In the case of individuals, or families (including families with children) of two persons, at the higher of:

(2) The highest level of payment which is generally available to individuals in any of the three groups (aged, blind and disabled)

A State plan for medical assistance must—

. . . . .

(17) include reasonable standards (which shall be comparable for all groups . . .) for determining eligibility for and the extent of medical assistance under the plan . . . ..

Plaintiffs' theory presumably is that if more of a medically needy non-SSI recipient's income is taken under the Medicaid program, he receives pro tanto less subsidization and thus less "medical assistance" than does a categorically needy SSI recipient. The second source for a comparability requirement is 45 C.F.R. § 248.3(c)(1)(ii)(B) (2), requiring that for the medically needy the state plan shall provide "income levels for maintenance" equal to the "highest level of payment which is generally available to individuals in any of the three groups (aged, blind and disabled) who are . . . eligible for benefits under title XIX . . . ." *See Aitchison v. Berger*, 404 F.Supp. 1137, 1143–44 (S.D.N.Y. 1975) (Frankel, J.), *aff'd without opinion*, 538 F.2d 307 (2 Cir.), *cert. denied*, —— U.S. ——, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976); *cf. Dominguez v. Milliken*, CCH Medicare and Medicaid Guide ¶ 26,633 (W.D.Mich.1973); *Schaak v. Schmidt*, 344 F.Supp. 99 (E.D.Wis.1971).[9]

who are (or would be, except for income) eligible for benefits under title XIX;

. . . . .

(2) Provide that there will be a flexible measurement of available income which will be applied in the following order of priority:
(i) First, for maintenance, so that any income in an amount at or below the established level will be protected for maintenance
. . .
(ii) Next, income will be applied to costs incurred for medical insurance premiums . . ., for any copayments or deductibles . . ., and for necessary medical or remedial care recognized under State law and not encompassed within the State plan for medical assistance. . . .
(iii) All of the remaining excess income and medical resources in the form of insurance or other entitlement will be applied to costs of medical assistance included in the State plan. . . .

The flaw in plaintiffs' comparability argument is that there has been no showing that categorically needy Medicaid recipients themselves keep anything more than $28.50. The New York "spend down" regulation applies on its face to *all* institutionalized Medicaid recipients, and plaintiffs now concede (plaintiffs' brief at 11 n.), on the basis of affidavits submitted by the defendants,[10] that the categorically needy like the medically needy are in practice normally prevented from keeping more than that amount.

Plaintiffs thus are forced to argue that the enforcement of the $28.50 spend-down against categorically needy SSI recipients is itself in conflict with federal law. Though we do not agree with the district court's conclusion that, in so contending, plaintiffs are relying on the rights of third parties which they lack standing to assert, there is no support in the Social Security Act or pertinent regulations for any prohibition against the $28.50 spend-down for the categorically needy.

The Title XVI provisions, 42 U.S.C. § 1382(e)(1)(B)(i) and § 1382a(b)(2)(A), quoted above, provide that institutionalized persons receiving Medicaid are eligible for SSI payments at a rate "not in excess of" $25 per month, to be reduced by any personal income exceeding $20 per month, thus allowing an institutionalized SSI recipient to attain a monthly income up to $45 before he becomes ineligible for SSI aid. But there is nothing in Title XVI that forbids the use of the $20 income disregard toward the costs of medical assistance under the Medicaid

program. Furthermore, Medicaid recapture of the SSI income disregard makes some sense as a way of benefiting the states: the basic $25 payment under the SSI program is provided entirely by federal funding, 42 U.S.C. § 1381a, while in the Medicaid program from 17 to 50 per cent of funding must be provided by the participating state, 42 U.S.C. §§ 1396b(a), 1396d(b). The recapture of the income disregard for the costs of medical assistance is therefore not merely a matter of transferring monies from one federal coat pocket to another.

■ Plaintiffs instead propose that 42 U.S.C. § 1396a(a)(14) invalidates New York's requirement that categorically needy Medicaid recipients spend down to $28.50. Section 1396a(a)(14)(A) states that:

A State plan for medical assistance must—

.    .    .    .    .

(14) effective January 1, 1973, provide that—

(A) in the case of individuals  .   .   . with respect to whom supplemental security income [SSI] benefits are being paid under subchapter XVI of this chapter, or who meet the income and resources requirements of  .   .   .  the supplemental security income program under subchapter XVI of this chapter,

.    .    .

(i) no enrollment fee, premium, or similar charge, and *no deduction, cost sharing, or similar charge* with respect to the care and services listed in [42 U.S.C. § 1396d(a)(1)–(5), (7)][11] will be imposed under the plan, and

---

As Judge Frankel noted in *Aitchison v. Berger, supra,* 404 F.Supp. at 1144 n.18, strictly speaking it is subdivision (2) of § 248.3(c) which is more apposite to comparability since that subdivision concerns how much of a medically needy person's income can be used to defray the costs of medical assistance, while subdivision (1) concerns *eligibility* for Medicaid payments. However, as Judge Frankel noted, "the established level" protected by (2) would sensibly be construed as the same as the minimum eligibility requirements established by (1).

**10.** See Affidavit of J. Raymond Diehl, Jr., Associate Commissioner, Bureau of Operations, Division of Medical Assistance, New York State

Department of Social Services (April 2, 1976) (plaintiffs' appendix at R44), stating that the Department of Social Services has advised local districts that categorically needy persons are subject to the $28.50 spend-down and that a spot check of several districts showed they were requiring patients in chronic care facilities receiving SSI benefits to use income in excess of $28.50 toward the cost of medical care.

**11.** These categories include inpatient and outpatient hospital services, other laboratory services, physicians' services, and skilled nursing facility services.

(ii) any deduction, cost sharing, or similar charge imposed under the plan with respect to other care and services [12] will be nominal in amount . . . .[13] (Emphasis added).

Despite plaintiffs' contention, we find no evidence that Congress intended by this to prohibit the spend-down of disregarded income to cover the cost of institutionalized care. The purpose of the cost-sharing prohibition was to make sure that the states did not reduce individuals' income below the level "necessary for maintenance." [14] That Congress considered the $25 basic SSI cash payment at least minimally adequate for the personal needs of institutionalized persons is apparent from the very fact that this is the only amount available to the most needy persons who are lacking any outside income.[15] This is the view adopted by HEW, see HEW Policy Information Memo No. 74–11 (March 15, 1974):

Regarding the relationship between application of an institutionalized categori-

cally needy individual's income toward his medical costs, and prohibitions against cost sharing prior to enactment of P.L. 92–603, the statutory limitations on cost sharing charges which may be imposed on the categorically needy were designed to assure that the State-established maintenance standard necessary to meet expenses of daily living was protected for such individuals. In establishing a lower maintenance level applicable to institutionalized individuals, for whom most of such expenses are met by the title XIX vendor payment, application of an institutionalized individual's income above the lower maintenance level toward the cost of care in the facility is not in conflict with the purpose or intent of limitations on cost-sharing.

This reasonable view of the statute by an agency entrusted with its execution is "entitled to considerable deference," *McGraw v. Berger*, 537 F.2d 719, 725 (2 Cir. 1976); *New York Department of Social Services v.*

---

**12.** These include prescribed drugs, dental services, and physical therapy, 42 U.S.C. § 1396d(a)(6), (8)–(17).

**13.** Plaintiffs' use of § 1396a(a)(14)(A) as the *basis for a comparability argument is* somewhat roundabout, since § 1396a(a)(14)(B) provides directly that for medically needy individuals, who are not receiving SSI assistance, "any deductible, cost-sharing, or similar charge imposed under the plan will be nominal."

**14.** *See* Senate Report No. 404, 89th Cong., 1st Sess. (1965):

The State may require the use of all the excess income of the individual toward his medical expenses, or some proportion of that amount. In no event, however, with respect to . . . [the provision] described below with reference to the use of deductibles for certain items of medical service, may a State require the use of income or resources which would bring the individual's income below the amount established as the test of eligibility under the State plan. Such action would reduce the individual below *the level determined by the State as necessary for his maintenance.*

. . . . .

No deduction, cost sharing or similar charge may be imposed with respect to inpatient hospital services furnished under the plan. This provision is related to another provision in the bill which requires States to pay reasonable costs for inpatient hospital

services provided under the plan. Taken together, these provisions give assurance that the hospital bill incurred by a needy individual shall be paid in full under the provisions of the State plan for the number of days covered and that States may not expect to require the individual to use his income or resources (*except such income as exceeds the State's maintenance level*) toward that bill. The reasonable cost of inpatient hospital services shall be determined in accordance with standards approved by the Secretary and included in the State plan. (Emphasis added). *Reprinted* in U.S.Code Cong. & Admin.News, p. 2019 (1965).

**15.** *See* House Report No. 231, 92d Cong., 2d Sess. (1971), which accompanied the general revision of Title XVI:

People who are residents of certain public institutions, or hospitals or nursing homes which are getting Medicaid funds, would get benefits of up to $25 a month (reduced by nonexcluded income). For these people most subsistence needs are met by the institution and full benefits are not needed. Some payment to these people, though, would be needed to enable them to purchase small comfort items not supplied by the institution. *Reprinted* in U.S.Code Cong. & Admin.News, p. 5136 (1972).

*Dublino,* 413 U.S. 405, 421, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973), and nothing has been cited to us in the language or legislative history of the Social Security Act that is inconsistent with HEW's view.

■ The only apparent limit on spend-down for the categorically needy lies in 45 C.F.R. § 248.3(b)(4)(i). (The limit is one that in fact covers the medically needy as well, thus rendering redundant any comparability argument.) This HEW regulation provides:

(b) With respect to both the categorically needy and, if they are included in the plan, the medically needy, a State plan [under Title XIX] must:

.    .    .    .    .

(4) Provide that a lower income level for maintenance shall be used for individuals not living in their own homes but receiving care in hospitals, skilled nursing facilities, intermediate care facilities, and institutions for tuberculosis or mental diseases which are covered under title XIX. This lower income level must be reasonable in amount for clothing and personal needs for such individuals, and

(i) For aged, blind, and disabled individuals, such income level must be at a minimum of $25.00 per month; .    .    ..

Thus a state spend-down requirement could not lower a Medicaid recipient's retained income and SSI payments below $25.00. But New York's $28.50 spend-down requirement is of course in full compliance with that minimum.

This view of the statute and the legality of a $28.50 spend-down requirement is supported by HEW's own interpretation. *See* HEW Policy Information Memo No. 74–11:

In determining financial eligibility for Medicaid, in addition to other disregards, the amount of the Supplemental Security Income (SSI) benefit and any State supplementary payment must be disregarded in computing income of the individual. In computing income available for application toward the cost of care in the

facility, there is currently no prohibition against applying income which is disregarded in the eligibility determination toward such cost, as long as the appropriate amount is retained for personal needs, per 45 CFR 248.3(b)(4).

*See also* Letter from HEW Regional Commissioner Elmer W. Smith to John Gray, December 8, 1975 (plaintiffs' appendix at R23):

The fact that $20 of his income was not counted in determining his financial eligibility for SSI benefits (and in most States his financial eligibility for Medicaid), does not require that such amount also be protected in determining how much income is to be applied to medical costs. Therefore, in computing income available for application toward the cost of care in the facility, there is currently no prohibition against applying income which was disregarded in the eligibility determination toward such cost, as long as the appropriate amount is retained for personal needs, per 45 CFR 248.3(b)(4).

We see no reason to differ with HEW's interpretation.

It is understandable that plaintiffs and their able counsel should regard $28.50 a month as a sum unduly low to meet the personal needs of institutionalized Medicaid recipients, especially of the "medically needy," many of whom have been accustomed to better things. While some of the instances cited are indeed pathetic, we must not forget—more important we think Congress did not forget—the vast amount of public money expended to furnish plaintiffs with institutional care. Congress therefore has seen fit to protect only a modest portion of recipients' income against recapture and to allow the rest to be used to meet their medical costs. In requiring a spend-down to $28.50 per month, New York has not transgressed any federal command.

■ The judgment dismissing the complaint is affirmed.[16] No costs.

---

**16.** Submission of uncontroverted proof that New York is not in fact discriminating with respect to Medicaid against the medically

needy in favor of the categorically needy, see note 10 *supra,* and the district court's correct overruling of plaintiffs' claim that the Social

Security Act required such discrimination, both done in the course of exercising its power to examine the statutory claim, deprived plaintiffs' constitutional claim, which facially passed the substantiality test, see note 6 *supra,* of the substantiality required to trigger a request for convoking a three-judge court.