Athalie LAMORE, et al., Plaintiffs,
Appellants,

v.

H. Rollin IVES, Commissioner, Maine
Department of Human Services, Defendant, Third–Party Plaintiff, Appellee.

H. Rollin IVES, Commissioner, Maine
Department of Human Services, Defendant, Third–Party Plaintiff, Cross–Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary,
Department of Health and Human Services, Third–Party Defendant, Cross–Appellee.

Nos. 91–1939, 91–1998.

United States Court of Appeals,
First Circuit.

Heard April 7, 1992.

Decided Oct. 20, 1992.

Martha A. Grant, Legal Services for the Elderly, Inc., Presque Isle, Me., with whom Jeanne Finberg, Nat. Senior Citizens Law Center, Washington, D.C., was on brief for Athalie Lamore, et al.

George Eng, Asst. Regional Counsel, Dept. of Health and Human Services, Washington, D.C., for Louis W. Sullivan, M.D., Secretary, Dept. of Health and Human Services.

Marina E. Thibeau, Asst. Atty. Gen., Dept. of Human Services, Michael E. Carpenter, Atty. Gen., and Christopher C. Leighton, Deputy Atty. Gen., Augusta,

Me., on brief for H. Rollin Ives, Com'r, Maine Dept. of Human Services.

Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and BOYLE,* U.S. District Judge.

LEVIN H. CAMPBELL, Senior Circuit Judge.

This appeal raises the question whether Veterans Administration Aid and Attendance benefits should be treated as income for purposes of determining the extent of Medicaid allowances an eligible veteran or veteran's survivor can receive under the Home and Community–Based Medicaid Waiver Program.

Plaintiffs-appellants are disabled veterans or dependents of deceased veterans who receive Aid and Attendance benefits from the Veterans Administration pursuant to 38 U.S.C. § 1502(b), and who also receive Medicaid allowances pursuant to the Home and Community–Based Medicaid Waiver Program, 42 U.S.C. 1396n(c) & (d). Plaintiffs sued the Maine Department of Human Services (the "state defendant") in state court after the State initiated a policy of treating Aid and Attendance benefits as income for purposes of determining the amount plaintiffs must contribute toward their own care under the Medicaid Waiver Program.[1] *See* HCFA State Medicaid Manual § 3701.[2] According to plaintiffs, this action violated federal law. The state defendant removed the case to the United States District Court for the District of Maine and filed a third party complaint against the Secretary of the United States Department of Health and Human Services (the "federal defendant"). The third party complaint alleged that the federal defendant expressly directed the State to use Aid and Attendance benefits in determining a Medicaid recipient's cost of care.[3] Based on a stipulated record, the district court entered judgment for the state defendant finding that no federal law had been violated. The court then dismissed the State's third party complaint. Plaintiffs appeal and the state defendant cross-appeals.[4] We affirm.

### I.

As mentioned, plaintiffs received Aid and Attendance Benefits from the United

---

* Of the District of Rhode Island, sitting by designation.

1. Prior to bringing suit in state court, each plaintiff requested and received a fair hearing regarding the effect of the change in policy on the payments each was required to make towards his or her own care. In each case the decision of the Fair Hearing Officer affirmed the Department of Human Services' decision.

2. Section 3701.2 of the Health Care Finance Administration State Medicaid Manual provides:

    For purposes of the posteligibility process, total income includes all amounts of income available to the individual ... from all sources, which are considered to be income for purposes of eligibility whether counted or disregarded.

    \* \* \* \* \* \*

    Total income also includes payments made directly to the individual under a Federal, State, or local government program for medical or remedial care or social services which are not considered to be income for purposes of eligibility, e.g., Veterans Administration payments for aid and attendance....

    HCFA State Medicaid Manual § 3701.2.

3. The State changed its policy after consultation with Alfred G. Fuoroli, the Associate Regional Administrator for the Health Care Financing Administration (HCFA) of the Department of Health and Human Services. In a letter dated November 21, 1989, Mr. Fuoroli stated that

    HCFA's position on VA A and A payments was clarified in proposed rules in the Federal Register.... The proposed rules revised regulations in six places ... so that the last sentence in each, pertaining to what is income, reads:

    "It also includes payments made directly to the individual under a Federal, State, or local government program for medical or remedial care or social services, which are not considered to be income for purposes of eligibility, e.g. Veterans administration payments for aid and attendance....

    My staff confirmed with our central office that the policy expressed in the proposed regulation remains as HCFA policy pending final regulations....

    *Letter from Alfred G. Fuoroli, Associate Regional Administrator, HCFA, to Rollin Ives, Commissioner, Maine Department of Human Services (November 21, 1989).*

4. The State's cross appeal seeks to preserve the viability of any claims that it has against the federal defendant only in the event that this court does not affirm the district court's decision.

States Department of Veterans' Affairs pursuant to 38 U.S.C. § 1502(b).[5] In addition, plaintiffs are recipients of Medicaid under the Home and Community–Based Medicaid Waiver provisions of the Medicaid Program. 42 U.S.C. § 1396 *et seq.* These provisions authorize the Secretary to grant a waiver to a state under which approved costs of home and community based services are reimbursed for eligible individuals who would otherwise require care in a nursing home facility, but who elect to remain in their homes. 42 U.S.C. § 1396n(d); 42 C.F.R. § 435.217.[6]

As a state that has elected to participate in the Medicaid program, Maine has assumed a procedural obligation to include, in its State plan for medical assistance, "reasonable standards ... for determining eligibility for and the extent of medical assistance...." 42 U.S.C. § 1396a(a)(17); *see also* 42 U.S.C. § 1396a(a)(10)(A)(ii)(VI) (describing generally the category of individuals eligible for medical assistance under a State plan providing home and community based services).[7] Under Maine's state plan, the Department of Human Services

(DHS) determines an applicant's participation in the home and community based services in two phases. First, DHS establishes the applicant's financial and medical eligibility to participate in the program (the "eligibility" phase). Second, the agency determines the extent of assistance to which an applicant is eligible; specifically, the amount the applicant will have to contribute towards his or her own care (the "post-eligibility" phase). Both the eligibility and the post-eligibility phases require a determination of the applicant's income and resources.

All the parties agree that for purposes of determining eligibility for home and community based services, income does not include Aid and Attendance benefits. Such payments are specifically excluded under the relevant federal regulation:

Social Services are not income if they are any of the following:

(1) Assistance provided in cash or in kind (but not received in return for a service you perform) under any Federal, State, or local government program whose purpose is to provide social services includ-

---

**5.** 38 U.S.C. § 1502(b) provides in pertinent part:

For purposes of this chapter, a person shall be considered to be in need of a regular aid and attendance if such person is (1) a patient in a nursing home or (2) helpless or blind as to need or require the regular aid and attendance of another person.

**6.** 42 U.S.C. § 1396n(d) provides in pertinent part:

(1) Subject to paragraph (2), the Secretary shall grant a waiver to provide that a State plan approved under this subchapter shall include as "medical assistance" under such plan payment for part or all of the cost of home or community-based services (other than room and board) which are provided pursuant to a written plan of care to individuals 65 years of age or older with respect to whom there has been a determination that but for the provision of such services the individuals would be likely to require the level of care provided in a skilled nursing facility or intermediate care facility the cost of which could be reimbursed under the State plan....

42 C.F.R. § 435.217 provides:

The agency may provide Medicaid to any group or groups of individuals in the community who—

(a) Would be eligible for Medicaid if institutionalized;

(b) Would require institutionalization in the absence of home and community-based services under a waiver granted under Part 441, Subpart G, of this subchapter; and

(c) Receive the waivered services.

**7.** 42 U.S.C. § 1396a(a)(10)(A)(ii)(VI) provides in pertinent part:

A State plan for medical assistance must—

*     *     *     *     *     *

(10) provide—

(A) for making medical assistance available ...

(ii) at the option of the state, to any group or groups of individuals ... who are not individuals described in clause (i) of this subparagraph but—

(VI) who would be eligible under the State plan under this subchapter if they were in a medical institution, with respect to whom there has been a determination that but for the provision of home or community-based services described in subsection (c), (d), or (e) of section 1396n of this title they would require the level of care provided in a hospital, nursing facility or intermediate care facility for the mentally retarded the cost of which could be reimbursed under the State plan, and who will receive home or community-based services pursuant to a waiver granted by the Secretary under subsection (c), (d), or (e) of section 1396n of this title.

ing vocational rehabilitation (*Example: Cash given you by the Veterans Administration to purchase aid and attendance*); ....

20 C.F.R. § 416.1103 (emphasis supplied).[8] The parties disagree, however, as to whether Aid and Attendance benefits should be counted as income for purposes of the post-eligibility determination. The state and federal defendants contend that the Secretary has the authority to allow Aid and Attendance benefits to be considered in assessing income for purposes of the post-eligibility determination even though the same benefits are not counted as income when determining eligibility for the home and community-based Medicaid waiver program. Plaintiffs, on the other hand, contend that including Aid and Attendance benefits in income in the post-eligibility stage violates explicit statutory mandates and is contrary to congressional intent.

## II.

Plaintiffs rely on 42 U.S.C. § 1396a(a)(17) in support of their position that Aid and Attendance benefits may not be counted as income in determining the amount an eligible applicant must contribute to his or her own care under the Medicaid waiver program. Section 1396a(a)(17) provides that:

A State plan for medical assistance must—

(17) ... include reasonable standards (which shall be comparable for all groups ...) for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such

income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and (in the case of any applicant or recipient who would, except for income and resources, be eligible for aid or assistance in the form of money payments under any plan of the State approved under subchapter I, X, XIV, or XVI or part A of subchapter IV, or to have paid with respect to him supplemental security income benefits under subchapter XVI of this chapter) as would not be disregarded (or set aside for future needs) in determining eligibility for such aid assistance, or benefits,....

The plaintiffs would have us parse out the second parenthetical, which they contend is neither "relevant" nor "essential to analyzing the meaning of the statute at all." Lacking the parenthetical, the statute would provide that state Medicaid plans must "include reasonable standards ... for determining ... the extent of medical assistance, ... which ... provide for taking into account only such income ... as would not be disregarded in determining eligibility." So simplified, the statute is unambiguous, say plaintiffs, in requiring that the criteria for assessing income must be the same for purposes of determining eligibility as for determining post-eligibility.

While the statute is indeed complex—the district court aptly described it as "a virtually impenetrable thicket of legalese and gobbledygook"—we can see little justification for reading the cited parenthetical out of it. *See United States v. Ven–Fuel*, 758 F.2d 741, 751 (1st Cir.1985) ("[a]ll words

---

**8.** The Medicaid Statute defines income for purposes of eligibility by reference to the Supplemental Security Income statute. 42 U.S.C. § 1396a(r)(2) and 42 C.F.R. § 435.722(b).

42 U.S.C. § 1396a(r)(2) provides:

The methodology to be employed in determining income and resource eligibility for individuals under subsection ... (a)(10)(A)(ii) ... of this section ... may be less restrictive, and shall be no more restrictive, than the methodology—

(i) in the case of groups consisting of aged, blind, or disabled individuals, under the supplemental security income program under subchapter XVI of this chapter, or

(ii) in the case of other groups, under the State plan most closely categorically related. 42 C.F.R. § 435.722(b) provides:

In determining the eligibility of individuals under the income standards established under this section [dealing with individuals needing nursing home level care], the agency must not take into account income that would be disregarded in determining eligibility for SSI or for an optional State supplement [to SSI]. The SSI definition of income is found in 20 C.F.R. § 416.1103, which is quoted in the text *supra*.

and provisions of statutes are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless, redundant or superfluous"); *see also Laracuente v. Chase Manhattan Bank*, 891 F.2d 17, 23 (1st Cir.1989) ("absent ambiguity in the statutory language, our inquiry is complete and ends with the plain language of the statute"); *Securities Indus. Ass'n v. Connolly*, 883 F.2d 1114, 1118 (1st Cir.1989) (statutory language must be accorded its ordinary meaning), *cert. denied*, 495 U.S. 956, 110 S.Ct. 2559, 109 L.Ed.2d 742 (1990). The statute should be read as a whole, with due consideration to both the content of the parenthetical which plaintiffs urge us to ignore and to its position in the text. Like the district court, we believe the parenthetical modifies the phrase "as would not be disregarded ..." which follows it. *See Lamore v. Ives*, Civil No. 90–0092–B, slip op. at 3–4, 1991 WL 193601 (D.Me. July 19, 1991); *see also Sherman v. Griepentrog*, 775 F.Supp. 1383, 1391 (D.Nev.1991) (agreeing with the reasoning expressed in *Lamore*). The parenthetical makes no sense standing alone nor is it explained or modified by the language which precedes it. Meaning can be found, however, if it is understood as modifying the phrase that follows it. If so, the restriction on the characterization of income inherent in the "as would not be disregarded ..." phrase applies "in the case of" all such individuals as the parenthetical describes.

If plaintiffs are among those described in the parenthetical, then section 1396a(a)(17) directs the DHS to exclude Aid and Attendance benefits from income for purposes of the post-eligibility determination if it wishes to be assured that the Secretary will approve its plan, since such benefits *would* be disregarded in determining an applicant's eligibility for the medicaid waiver program. *See* 20 C.F.R. § 416.1103 and *supra* note 8. If, on the other hand, the parenthetical does not describe the plaintiffs, then the statute does not restrict the Secretary's discretion to define income dif-ferently in the post-eligibility phase than the way it is defined in the eligibility phase.

## III.

The parenthetical at issue in 42 U.S.C. § 1396a(a)(17) expressly applies to,

> ( ... any applicant or recipient who would, except for income and resources, be eligible for aid or assistance in the form of money payments under any plan of the State approved under subchapter I, X, XIV, or XVI or part A of subchapter IV, or to have paid with respect to him supplemental security income benefits under subchapter XVI of this chapter).

As the district court pointed out, these programs are (1) old age assistance, 42 U.S.C. § 301; (2) assistance to the blind, 42 U.S.C. § 1201; (3) aid for the permanently and totally disabled, 42 U.S.C. § 1351; (4) Supplemental Security Income for the Aged, Blind and Disabled, 42 U.S.C. § 1381; and (5) Aid to Families with Dependent Children, 42 U.S.C. § 601. The district court thought the parenthetical did not apply to plaintiffs because they "do not receive benefits under any of these programs." While the latter may be so, the parenthetical does not speak of those who actually receive benefits under the named programs, but rather of "any applicant or recipient who *would, except for income and resources, be eligible* for aid or assistance." 42 U.S.C. § 1396a(a)(17) (emphasis supplied); *see also Sherman v. Griepentrog*, 775 F.Supp. at 1391 ("[t]he District Court of Maine [in *Lamore*] failed to consider the import of the language 'any applicant or recipient who would, *except for income and resources*, be eligible for aid.'") (emphasis in original). Thus, the district court was incorrect that the plaintiffs' non-receipt of benefits under the named programs demonstrated that the parenthetical did not apply to them.

The federal and state defendants, however, give another, more persuasive reason for construing the parenthetical to omit plaintiffs. According to the Secretary of the United States Department of Health and Human Services, the parenthetical

should be read to encompass only "medically needy" individuals. In 42 U.S.C. § 1396a(a)17 Congress explicitly delegated to the Secretary the broad authority to prescribe standards for assessing an applicant's eligibility for, and the extent of medical assistance under, a State Medicaid Plan.[9] In the face of such an explicit delegation of authority, the Secretary's interpretation of the parenthetical and the "as would not be disregarded" language is " 'entitled to more than mere deference or weight.' " *Schweiker v. Gray Panthers*, 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981) (quoting *Batterton v. Francis*, 432 U.S. 416, 426, 97 S.Ct. 2399, 2406, 53 L.Ed.2d 448 (1977)); *Herweg v. Ray*, 455 U.S. 265, 274, 102 S.Ct. 1059, 1066, 71 L.Ed.2d 137 (1982). "Because Congress has entrusted the primary responsibility of interpreting a statutory term to the Secretary rather than to the courts, his definition is entitled to 'legislative effect' " *Herweg*, 455 U.S. at 275, 102 S.Ct. at 1066; *Gray Panthers*, 453 U.S. at 44, 101 S.Ct. at 2640; *Batterton*, 432 U.S. at 425, 97 S.Ct. at 2405. Our standard for reviewing the Secretary's interpretation of Section 1396a(a)(17), therefore, is limited to "determining whether the Secretary has exceeded his statutory authority" and whether the policy of including Aid and Attendance benefits in income for purposes of the post-eligibility determination in the Waiver program "is arbitrary and capricious." *Herweg*, 455 U.S. at 275, 102 S.Ct. at 1066; *Gray Panthers*, 453 U.S. at 44, 101 S.Ct. at 2640; *Batterton*, 432 U.S. at 426, 97 S.Ct. at 2406. As the Secretary's reading of Section 1396a(a)(17) seems perfectly consistent with the Medicaid statutory scheme and the relevant legislative history, we have little question that we should defer to it. Hence, we affirm the district court, although on the different basis of the Secretary's interpretation of the parenthetical as referring only to the "medically needy"—a group that does not include plaintiffs.[10]

## IV.

The Medicaid statute provides for three classes of eligible persons: the "categorically needy," the "medically needy" and the "categorically optionally needy." The "categorically needy" are those individuals who are eligible to receive assistance under either the Aid to families with Dependent Children program ("AFDC"), 42 U.S.C. § 601 *et seq.* (1982), or the Supplemental Security Income Program for the Aged, Blind and Disabled ("SSI"), 42 U.S.C. § 1381 *et seq.* *See* 42 U.S.C. § 1396a(a)(10)(A)(i); 42 C.F.R. § 435.1(b)(ii) (1984); *see also Gray Panthers*, 453 U.S. at 37 & n. 1, 101 S.Ct. at 2637 & n. 1; *Camacho v. Perales*, 786 F.2d 32, 33 (2d Cir.1986). The "medically needy" are those individuals who "(a) meet the non-financial eligibility requirements for cash assistance under AFDC or SSI, and (b) have income or resources that exceed the financial eligibility standards of the relevant program but that are considered insufficient to pay for necessary medical care." *Camacho*, 786 F.2d at 33–34; *see* 42 U.S.C. § 1396a(a)(10)(C); 42 C.F.R. § 435.1(b)(3)(i); *see also Gray Panthers*, 453 U.S. at 37, 101 S.Ct. at 2637 (the "medically needy" are "persons lacking the ability to pay for medical expenses, but with incomes too large to qualify for categorical assistance"). Finally, the "optionally categorically needy" are "(1) individuals who would be eligible for, but for some reason are not receiving, SSI benefits and (2) individuals who would be eligible for SSI benefits but for their insti-

---

9. Section 1396a(a)17 provides that a state plan for medical assistance must

> provide for taking into account only such income and resources as are, *as determined in accordance with standards prescribed by the Secretary,* available to the applicant or recipient and (in the case of any applicant or recipient who would, except for income and resources, be eligible for aid or assistance ...) as would not be disregarded....

42 U.S.C. § 1396a(a)17 (emphasis supplied).

10. Because the instant case is susceptible to resolution on the basis discussed herein, we need not address, and express no opinion on, the question of whether appellants' grievance, if it were well founded, could be redressed by means of a suit against the state defendant. *See generally Stowell v. Ives*, 976 F.2d 65 (1st Cir. 1992).

tutionalized status. 42 C.F.R. §§ 435.210–435.211." *Herweg,* 455 U.S. at 269, 102 S.Ct. at 1063; *see* 42 U.S.C. § 1396a(a)(10)(A)(ii).

Plaintiffs are described in 42 U.S.C. § 1396a(a)(10)(A)(ii)(VI), *see supra* note 7, and are, therefore "optionally categorically needy." The language of the parenthetical at issue in 42 U.S.C. § 1396a(a)(17), on the other hand, well describes the "medically needy." The parenthetical speaks of those individuals "who would, except for income and resources, be eligible for aid or assistance in the form of money payments under any plan by the State approved under subchapter I, X, XIV, or XVI or part A of subchapter IV, or to have paid with respect to him supplemental security income benefits under subchapter XVI of this chapter." As mentioned, the referenced programs are old age assistance, assistance to the blind, aid for the permanently and totally disabled, Supplemental Security Income for the Aged, Blind and Disabled, and Aid to Families with Dependent Children. They are the same cash assistance programs as would allow a person to qualify as categorically needy. See 42 U.S.C. § 1396a(a)(10)(A)(i). Thus, the parenthetical can sensibly be construed to refer to the "medically needy"—those persons who "except for income and resources" would qualify as categorically needy. *See Gray Panthers,* 453 U.S. at 37, 101 S.Ct. at 2637 (the medically needy are "persons lacking the ability to pay for medical expenses, but with incomes too large to qualify for categorical assistance"); *Camacho,* 786 F.2d at 33–34; *Friedman v. Berger,* 547 F.2d 724, 726 (2d Cir.1976) (the "medically needy" are those whose "annual income is too low to meet their medical expenses including the enormous cost of institutional care but too high to qualify them for the federal cash grant program providing 'Supplemen-

tal Security Income' (SSI) for the aged, blind, and disabled."), *cert. denied,* 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977).

Because it is reasonable to construe the parenthetical to refer to the medically needy, we see no basis for disturbing the Secretary's interpretation to that effect. It follows that the requirement in Section 1396a(a)(17) that the standards for determining eligibility for and the extent of medical assistance under a State plan must take into account only such income "as would not be disregarded ... in determining eligibility for such aid, assistance, or benefits [described in the parenthetical]," applies only "in the case of" the "medically needy." *See Friedman,* 547 F.2d at 727–28.[11] This interpretation is consistent with the legislative history of the Medicaid statute as it relates to the "medically needy." As the Second Circuit noted in *Camacho v. Perales,* "Congress included , in § 1902(a)(10)(B)(i) of the [Medicaid] Act a provision that required states electing to provide Medicaid to the medically needy to determine the applicant's Medicaid eligibility by using standards "comparable" to those used in determining eligibility for the related cash assistance program." 786 F.2d at 39 (citing Pub.L. No. 89–97, § 1902(a)(10)(B)(i), 79 Stat. 286, 345 (1965)). The legislative history accompanying the enactment of this provision provides that States are required to:

> take into account only such income and resources as ... are actually available to the applicant or recipient and as would not be disregarded ... in determining the eligibility for and the amount of the aid or assistance in the form of money payments for any such applicant or recipient under the title of the Social Security Act most appropriately applicable to him.

> In other words, *for persons such as plaintiffs,* who would be eligible to receive SSI benefits because of their age, blindness or disability were it not for their income, state standards must provide that income which is disregarded in determining SSI eligibility also be disregarded in determining eligibility for and the extent of medical assistance under Medicaid. *Id.* at 728 (emphasis supplied).

11. Plaintiffs in *Friedman* were "medically needy" because "their income [was] too low to meet their medical expenses ... but too high to qualify them for the federal cash grant program providing 'Supplemental Security Income' (SSI) for the aged, blind, and disabled." 547 F.2d at 726. Interpreting the relevant parenthetical in section 1396a(a)(17) and the language following it the Second Circuit stated:

S.Rep. No. 404, 89th Cong., 1st Sess., pt. 1 at 78 (1965), *reprinted in* 1965 U.S.Code Cong. & Admin.News 1943, 2018; *see Camacho*, 786 F.2d at 39.

Plaintiffs are "optionally categorically needy" and not "medically needy." Since the Medicaid statute places no similar restriction on the standards for determining the extent of medical assistance for the "optionally categorically needy,"[12] we hold that the state defendant's policy—at the direction of the Secretary—of including Veterans Aid and Attendance benefits in income for purposes of determining the amount an eligible individual must contribute toward his or her own care under the home and community based waiver program while excluding the same benefits for purposes of determining eligibility is not inconsistent with federal law.[13]

*Affirmed. Costs to appellees.*

---

12. In subsequent legislation Congress has acknowledged the disparate post-eligibility treatment of aid and attendance benefits for Medicaid recipients. The House Conference Report of the Omnibus Reconciliation Act of 1990 contained the following passage:

(8) Charges Applicable in Cases of Certain Medicaid–Eligible Individuals. There are circumstances in which, under current law, a State may not actually be making payments to a nursing home on behalf of a resident who is eligible for Medicaid. For example, a nursing home resident may be receiving Veterans' Administration aid and attendance payments. These payments are not taken into account in determining initial eligibility for Medicaid, but are considered, post-eligibility, in determining the amount of an individual's monthly income that is available to be applied to the cost of care.

H.R.Conf.Rep. No. 964, 101st Cong., 2d Sess. 843 (1990), *reprinted in* 1990 U.S.Code Cong. & Admin.News 2374, 2584.

13. Plaintiffs contend that the state defendant's Medicaid policy violates the Veteran's benefit laws of the United States. In support of their argument plaintiffs rely solely on the following general policy statement in the legislative history of the Veterans and Survivors Improved Pension Act of 1978, 38 U.S.C. §§ 501–508, 521–523:

It is intended that the new position system, as authorized by the reported bill, should:

First, assure a level of income above the minimum subsistence level allowing veterans and their survivors to live out their lives in dignity.

Second, prevent veterans and widows from having to turn to welfare assistance

Third, provide the greatest pension for those with the greatest needs.

Fourth, guarantee regular increases in pension which fully account for increases in the cost of living.

H.R.Rep. No. 1225, 95th Cong., 2d Sess. 4 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5583, 5585. We agree with the district court that this statement alone provides no basis for finding that Aid and Attendance benefits must be treated in a specific way in the Medicaid statute.